# CHARLESTON

VANCE v. VIRGINIA POCAHONTAS COAL COMPANY.

Submitted September 2, 1914. Decided September 15, 1914.

TRIAL—*Direction of Verdict—Evidence.*

> In an action for damages by servant against master for injuries, alleged to be the result of the master's negligence in providing defective and unsafe machinery or appliances, if the character of the evidence is such that the court would not properly allow a verdict in favor of plaintiff to stand, it is proper practice, on defendant's motion, to strike out the evidence and direct a verdict in his favor. (p. 731).

Error to Circuit Court, McDowell County.

Action by T. L. Vance against the Virginia Pocahontas Coal Company. Judgment for defendant, and plaintiff brings error.

*Affirmed.*

*Cook, Litz & Howard* and *E. C. Marshall,* for plaintiff in error.

*W. B. Kegley* and *Anderson, Strother & Hughes,* for defendant in error.

MILLER, PRESIDENT:

An action on the case for injuries sustained by plaintiff, an

employee, from a runaway coal car, operated in defendant's coal mine. On the trial the court below sustained defendant's motion to exclude plaintiff's evidence and direct a verdict in its favor, and thereupon pronounced the judgment of nil capiat complained of.

The act of negligence alleged and relied on, and to which the plaintiff's evidence relates, was that the coal car in question was defective, out of repair, so as to be a dangerous and unsafe instrument employed in the mine, wherefore it broke loose from the train and motor to which it was attached and ran down an incline to the heading in the mine where plaintiff was at work, striking and injuring him.

It was fully proven on the trial that the upper jaw of the drawhead, pulley bar or coupling, as variously described, was bent up some five or six inches, and would not receive or hold the coupling pin so as to be safely linked or coupled to the motor or other cars. To show negligence plaintiff undertook to prove that this car was substantially in the same defective condition when the brakeman, but a few moments before the accident, had hitched to the car at the side track, or "dog hole", as it is called, a place in the mine for storing cars when not in use. This was the burden of the plaintiff's case, for if the coupling device was in a reasonably safe condition when on the side track and was hitched to the train, and its defective and unsafe condition after the injury was due to the negligence of the brakeman in making the coupling or in the operation of the train after the coupling was made, or other negligent acts of a fellow servant, the injury was not actionable, and no recovery could be had.

The only evidence on this important and pivotal question was the bad condition of the drawhead, pulley bar or coupling on the car after the accident, and the testimony of the brakeman who made the coupling, and who was put upon the stand by and testified on behalf of plaintiff. He is somewhat indefinite as to the exact condition of this appliance at the time he hitched on to the car, whether bent or not. In one place he says, "I never noticed whether it was or not." In another, "I never noticed it when I first coupled it up; I didn't have time." All of which we interpret, in the light of his

other testimony, to mean that he made a quick coupling, not paying close attention to the condition of the fixtures, for he says in what follows: That the pulley bar was not in the same condition when he hitched on as after the accident, that the difference was it was afterwards bent up; that it couldn't have been bent up as badly before as after the accident or he could not have made the coupling at all, and that what made him think so was that he got the pin down through when he first coupled the car. He was uncertain whether he got the pin down through the lower jaw or not, did it hurriedly, but was sure he got the pin through the first hole. Called upon to account for the condition of the pulley bar after the accident the witness said: That the only way he could account for it was that when the front of the car went over the knuckle, or hill in the mine, the pulley bar was jerked up, but which he says would not have happened if the pulley bar had been in a proper condition, and the pin had gone down through the lower hole and the lower jaw of the pulley bar; but he says it could have been caused at the top of the knuckle by the pin jumping out of the lower jaw, for if when they reached the knuckle the pin was not down through the lower jaw it would have caused the upper jaw to bend upwards.

On cross-examination, this witness describing the manner of his making the coupling said he used both hands, one to hold the link, the other to hold the pin, that the pin was in the upper jaw or pulley bar, that he took hold of the pin and dropped it down, and that so far as he noticed a complete coupling was made, that if when he made the coupling the pulley bar had been bent up he would have noticed it. He further says that in bringing the car out and pushing it up the grade to the knuckle the pin might have slipped out or jumped up, that this sometimes happened, and the condition of the bar after the accident might have been brought about in this way.

There was some evidence of this and other witnesses that the car in question had been in a wreck, but the only facts on which this evidence was based was that the sides of the car were dented in, but not so as to affect its use. No witness said the car had in fact been in a wreck, nor that it was in any way

disabled or unfit for use. On the contrary, it had been in use before and was used after the accident.

Applying the familiar rules applicable on a demurrer thereto or motion to strike out the evidence, which need not be here restated, did this evidence tend in an appreciable degree to sustain the theory of negligence relied on, so as to entitle plaintiff to have the case go to the jury on the fact of negligence? We do not think it measures up to the requirements. The test, as announced in numerous cases, is, would the court, if the verdict should be other than the one directed, allow it to stand; if it would not properly do so, the motion to exclude and direct a verdict should prevail. *Butcher* v. *Sommerville,* 67 W. Va. 261, 266, and cases cited.

Tested by this rule would a verdict for plaintiff have been allowed to stand? We think not.

In a negligence action by servant against master for damages from defective machinery or other instruments employed in the work the burden is on the servant to show the defects therein as the proximate cause of the injuries sustained. *Humphreys* v. *Newport News & M. V. Co.,* 33 W. Va. 135, 10 S. E. 39; *Ketterman* v. *Dry Fork R. Co.,* 48 W. Va. 606; 26 Cyc. 1415-16; *Johnson* v. *C. & O. R. Co.,* 36 W. Va. 73. And such proof must amount to more than probability, or mere surmise, it should be reasonably certain and convincing. *N. & W. Ry. Co.* v. *Cromer's Admr.,* 99 Va. 763, 40 S. E. 54. Moreover, a master is not liable to his servant for injury from defective machinery and appliances unless he knows of it, or under the circumstances, and by reasonable and timely inspection and tests should have known of such defects. *Soward* v. *American Car & Foundry Co.,* 66 W. Va. 266; *Johnson* v. *C. & O. R. R. Co., supra.*

In the case here there is not a particle of evidence justifying the conclusion that the drawhead, pulley bar or coupling was in fact defective when hitched to the train or motor immediately before the accident. A jury might surmise or guess, or imagine, or say, that it was possibly so, but this, under the authorities, will not do. There must be certainty, the proof must be sufficient to establish the fact of negligence. Who says the appliance was defective or out of repair? No

one. The evidence of the brakeman tends more strongly to show the injury was due to negligent coupling by him, the negligence of a fellow servant, not actionable. The best judgment of the brakeman was that he made a complete coupling; and if the drawhead had been as defective then as after the accident he says he could not have made the coupling at all. The evidence is clear that some injury resulted to the appliance after the coupling was originally made. If some, why not all of it? One is as probable as the other, more so indeed. No one contradicts the evidence of the brakeman that if he failed to make a proper coupling, to get the coupling pin through both jaws of the drawhead and the link, the upper jaw would likely have been bent up as it was found after the accident in the operation of the car over the knuckle. The probability that the injury resulted in this way is stronger than that it was due to some other cause. And this makes the rule of res ipsa loquitur wholly inapplicable.

We are of opinion to affirm the judgment.

*Affirmed.*