# CHARLESTON

MANCHESTER *et al.* v. PARSONS.

Submitted February 23, 1915.   Decided March 16, 1915.

1. BILLS AND NOTES—*Payment to Prior Holder—Effect.*
   Payment to a prior holder does not discharge a negotiable instrument in the hands of a subsequent holder in due course. Subsection 4 of section 119, Negotiable Instruments Act, does not apply in such case. (p. 794).

2. SAME—*Action by Holder in Due Course—Signature of Indorser.*
   In a suit by the holder in due course against the maker of a negotiable note, the genuineness of the indorser's signature is not material if he has either authorized, or subsequently ratified such indorsement. (p. 796).

3. TRIAL—*Direction of Verdict—Evidence.*
   When the evidence is such as to warrant a finding by the jury in favor of one of the parties only, the court may properly direct a verdict for that party. (p. 797).

   (LYNCH, JUDGE, absent.)

Error to Circuit Court, Tucker County.

Action by Jason Manchester and others against L. W. Parsons. Judgment for plaintiff, and defendant brings error.
*Affirmed.*

*L. Hansford* and *A. R. Stallings,* for plaintiff in error.

*A. Jay Valentine,* for defendants in error.

WILLIAMS, JUDGE:

By this writ of error defendant seeks to reverse a judgment recovered against him by Jason Manchester and L. M. Elliott, upon notice and motion, under the statute. The recovery was upon a negotiable note made by defendant, payable to Burton & Co., a partnership composed of L. A. Burton and D. J. Grindell, and indorsed to plaintiffs. Defendant filed three pleas on which issues were joined. The substance of the pleas are: (1) that defendant had discharged the note by payment to the legal owner and holder, before the suit was brought; (2) denial that plaintiffs are *bona fide* holders for value in due course; and (3) that the name of Burton & Co., indorsed on the note, is not the firm's genuine signature, and was not placed there by any one having authority from them to do so. This last plea is verified by affidavit.

After the evidence had all been introduced, the court, on motion of plaintiffs, excluded defendant's evidence, and directed the jury to return a verdict for plaintiffs. A motion to set aside the verdict was overruled, exceptions taken, and judgment entered.

Burton & Co. was a Kenton, Ohio, firm, engaged in importing and selling horses for breeding purposes. Defendant lived at Parsons, West Virginia, and was engaged in breeding horses. The note is for $800, payable eighteen months after date, to the order of Burton & Co., at the First National Bank of Parsons, with six per cent. interest, and bears date September 22, 1910. It is proven that the note was negotiated to plaintiffs by one Lee Whorton, about the 1st of November, 1910. Whorton was then employed in selling horses for Burton & Co.

Defendant's pleas set up affirmative matters entailing on him the burden of proof. Any one of them, if sustained, would defeat recovery. But there is no evidence to support any of them. To sustain his first plea, defendant proved that on the 3rd of June, 1911, he sold and delivered to Burton & Co. some Percheron colts for $1,675, with the understanding and agreement that it was to pay his note, and that they were to execute to him their note for the balance. He produced a letter from D. J. Grindell, then a member of the firm but now

deceased, dated June 15, 1911, acknowledging receipt of the colts in good condition, and promising defendant to send him his note and the firm's note for the balance, soon.   Counsel contends that defendant's note was thus discharged.   But the uncontradicted testimony of L. A. Burton, the surviving partner, and of Lee Whorton is, that it had been indorsed to plaintiffs, for value, about the 1st of November, 1910, and, therefore, payment to the original holders did not discharge it.   Counsel invokes subsection 4 of section 119 of the Negotiable Instruments Act as authority for his contention.   Sec. 119 describes how a note may be discharged, and subsection 4 reads:  "By any other act which will discharge a simple contract for the payment of money."   This subsection must be interpreted with reference to the general purpose of the negotiable instrument act.   It must be read in connection with its other provisions, and made to harmonize with the general scheme and plan of the act.   Thus viewing subsection 4, it is apparent that it was never the legislative intent to make. so radical a change in the general law respecting negotiable instruments, as would be wrought by the literal interpretation contended for.   It is clear, from other provisions of the act, as well as from the preamble thereto, that the legislature did not contemplate making so vital and radical a change in the law, as to permit equities between the original parties to a negotiable instrument to defeat the title of an innocent holder for value in due course.   That would counteract the purpose of the statute, which was not to revolutionize the law, but to amend, enlarge and reenact certain sections of the statute law respecting negotiable instruments, and consolidate and arrange in one act the general laws on that subject, so as to make them uniform with the laws of other states.   The acts which will discharge a simple contract for payment of money, in order to effect a discharge of negotiable paper, within the contemplation of subsection 4, must, therefore, necessarily be limited to such acts as relate to, and affect, the holder of the paper demanding payment of it.   It does not include a holder for value in due course.   Negotiable paper, in the hands of such holder, is not discharged by payment made to his transferor, either before or after the transfer.   Such was the rule of the common law respecting negotiable paper, and it was

clearly not the legislative purpose to change the rule. It would injuriously affect the value of commercial paper, by putting it on a plane with simple contracts for the payment of money. We can not conceive that the legislature intended any such thing, although a literal interpretation of the subsection in question might indicate otherwise. Other provisions of the statute expressly preserve the rights of holders in due course. Sec. 52 defines a holder in due course to be one who takes the paper in good faith for value, without notice of any infirmities in it or defect in the title of the person negotiating it. And section 57 says that such an one holds it, "free from any defect of title of prior parties, and free from defenses available to prior parties among themselves and may enforce payment of the instrument for the full amount thereof against all parties liable thereon." To construe subsection 4 of section 119, as contended for by counsel would defeat section 57 and other provisions contained in the act. *Trust Co.* v. *Crawford and Ashby,* 69 W. Va. 109, holds that: "The rights of a *bona fide* assignee of such a note, in due course, are not affected by the equities of the maker." Although that was a suit on a negotiable note, given and payable, before the passage of the negotiable instruments statute, still it does not change the general commercial law in that respect. Hence, payment by defendant to Burton & Co., before the note became due, whether before or after they had negotiated it, could not defeat collection by an innocent holder for value who acquired it in due course.

There is, likewise, no evidence to support defendant's second plea. Every holder is deemed *prima facie* to be a holder in due course. Sec. 59. And, if it be assumed that proof of payment to Burton & Co., before the note was due, shows such defect in their title as casts upon plaintiffs, the holders, the burden of proving that they acquired title in due course, still they have fully discharged the burden. They prove that they purchased the note, about November 1st, 1910, and paid value therefor. There is no conflict in the testimony on that point.

There is, however, some conflict in the testimony respecting the genuineness of Burton & Co.'s signature indorsed on the note, an issue presented by the third plea. Still, in view of

the testimony of L. A. Burton, a member of the firm, admitting that the note was negotiated for them, and that they received the benefit of it, the genuineness of their signature becomes immaterial. By receiving the money for the note, they ratified the indorsement, no matter by whom made, and no one else has any right to controvert it. *Bank* v. *Bryan,* 72 W. Va. 29.

There is no evidence upon which the jury could have returned a verdict for defendant, and, according to the well established rule of practice, the court properly directed them to find for plaintiffs. *Diddle* v. *Casualty Co.,* 65 W. Va. 170; *Butcher* v. *Sommerville,* 67 W. Va. 261; and *Vance* v. *Virginia Pocahontas Coal Co.,* 74 W. Va. 728, 82 S. E. 1081.

The judgment is affirmed.

*Affirmed.*