## SMITH v. JARMAN et al.

No. 3775.    Decided December 15, 1922.    (211 Pac. 962.)

1. APPEAL AND ERROR—FACTS FOUND STAND AS CORRECT WHERE NEITHER PARTY EXCEPTS. Where neither party excepts to the court's findings, the facts found must stand as correct on appeal.

2. BILLS AND NOTES—MORTGAGES—WHERE MORTGAGE SECURES NEGOTIABLE INSTRUMENT PAYMENT TO MORTGAGEE BY MAKER AFTER TRANSFER OF INSTRUMENT IS AT OWNER'S RISK. In view of Comp. Laws 1917, §§ 6496, 7230, 7253, where mortgage is given to secure a negotiable instrument, any payment without notice of the assignment, made to the mortgagee after his indorsement and transfer of the instrument, is made at the maker's risk, neither the note nor the mortgage being affected by such payment, notwithstanding section 4903, providing that record of assignment

of mortgage is not notice to mortgagor so as to invalidate payment by him to mortgagee.[1]

3. BILLS AND NOTES—MORTGAGES—PAYMENTS ON NOTE TO MORTGAGEE'S BUSINESS SUCCESSOR BEFORE MATURITY HELD INEFFECTIVE AS AGAINST ASSIGNEE. Where mortagor's payments on a note secured by mortgage were made to mortgagee's business successor after the note was transferred, but before its maturity, such payments, although made without notice of the assignment, affected neither the note nor the mortgage in the hands of the transferee.

4. MORTGAGES—STATUTE INAPPLICABLE TO PAYMENTS TO MORTGAGEE'S SUCCESSOR. Comp. Laws 1917, § 4903, providing that recording of assignment of mortgage shall not be deemed notice to the mortgagor so as to invalidate payment by him to the "mortgagee," does not apply to validate payments to the mortgagee's business successor made by mortgagor after recorded assignment of mortgage.

Appeal from District Court, Third District, Salt Lake County; *L. B. Wight*, Judge.

Action by Loyal L. Smith against Heber Jarman and others. From a judgment dismissing the action, plaintiff appeals.

REVERSED AND REMANDED WITH DIRECTIONS.

*Frank B. Stephens* and *Grant H. Bagley*, both of Salt Lake City, for appellant.

*J. M. Stull* and *J. W. Stringfellow*, both of Salt Lake City, for respondents.

FRICK, J.

The plaintiff, hereinafter called appellant, commenced this action against the defendants to recover upon a certain

---

[1] *Donaldson* v. *Grant*, 15 Utah, 239, 49 Pac. 781; *Boucofski* v. *Jacobsen*, 36 Utah, 165, 104 Pac. 117, 26 L. R. A. (N. S.) 899; *Coburn* v. *Bartholomew*, 50 Utah, 566, 167 Pac. 1156.

negotiable promissory note and to foreclose the mortgage executed and delivered, as hereinafter stated, to secure the payment of said note. The complaint is in the usual form in such actions. The defendant Jarman filed an answer to the complaint, alleging part payment of said note to the mortgagee, as will hereinafter appear, while all the other defendants except his wife defaulted. The case was tried to the court, and it made findings of fact and conclusions of law in favor of the defendant, and entered judgments dismissing the action upon the grounds hereinafter stated, from which judgment this appeal is prosecuted.

The appellant bases his assignments of error solely upon the findings of fact and conclusions of law as declared by the district court. The assignments are: (1) That the court's conclusions of law are "erroneous, against law, contrary to and not supported by the findings of fact"; (2) that the judgment is contrary to and not supported by the findings of fact; and (3) that the court erred in not entering judgment for plaintiff as prayed for in his complaint. In view that the assignments of error are based entirely upon the court's findings of fact and conclusions of law, it becomes necessary to state the findings of fact and conclusions of law somewhat in detail. I shall, however, state them in my own language, condensing them wherever possible.

It appears from the findings of fact. That on the 1st day of April, 1916, the defendant Heber Jarman, who was then unmarried, in consideration of a loan of $1,250, executed and delivered to the Houston Real Estate Investment Company, a corporation (hereinafter called company), "his certain negotiable promissory note in writing," payable to said company or order, with interest at 7 per cent. per annum, payable semiannually; that said note by its terms became due five years after its date, "and contained no provision whereby the maker might pay the same before it became due." That to secure the payment of said note said Jarman executed and delivered to said company a mortgage in which he mortgaged certain real property, which is fully described therein, and which mortgage was duly recorded as provided

by law; that there was a stipulation, both in the note and in the mortgage aforesaid. That in case default be made in the payment of any interest due on the principal sum the holder of the same "might declare the entire principal * * * due and payable and proceed to foreclose said mortgage." That on the 26th day of May, 1916, the said company, in consideration of the payment of $1,250 by appellant to it, sold and indorsed said note and assigned said mortgage to the appellant, "who at all times since said last-mentioned date has been and now is the bona fide owner and holder" of said note. That the assignment of said mortgage was duly recorded on the 27th day of June, 1916. That said note, since its indorsement and delivery to the appellant, and said mortgage since its assignment to him, have at all times been in his possession at his home in the state of Illinois; that at the time of the execution of said note and mortgage one C. W. Johnson was the president and acting manager of said company, and that said Johnson directed the transactions relating to the making of said loan on the part of said company as its officer and agent. That thereafter, on the 1st day of June, 1916, said company discontinued its business, and said Johnson resigned as an officer thereof. That on or about the 17th day of June, 1916, the said company, in consideration of $2,500, "sold, assigned, and transferred to the said C. W. Johnson the real estate, loan, and rental business then and theretofore carried on by it, including the good will, expiration, actions, and clientèle, and the right to complete all unfinished transactions which the said company had under way, in the capacity of broker and agent, and all office furniture and fixtures." That after said sale said Johnson operated said business under the name of Johnson Realty Company, of which he was the president and manager, and that said "Johnson Realty Company, through its president and manager, during the time it continued in business, held out to the general public and to the defendant Heber Jarman in particular that it was the successor in interest and in the former business of the mortgagee company, but the plaintiff [appellant] herein had no

knowledge of any such holding out or representations."
That appellant never gave any "actual notice" to Jarman,
the defendant, that appellant "was the assignee and owner
of the said note and mortgage, and not until about Decem-
ber, 1919, did the said Heber Jarman have notice that the
said note and mortgage had been assigned. That some time
in April, 1920, the said Heber Jarman learned that the
plaintiff herein claimed to be the owner of said note and
mortgage." That prior to April 1, 1920, the appellant had
forwarded the interest coupons as they matured to said C.
W. Johnson for collection, and that the interest which had
accrued prior to said date was paid by said Jarman to said
Johnson, who remitted the same to appellant. That by vir-
tue of an "arrangement made between the said C. W. John-
son and the said Heber Jarman, the latter paid to the
Johnson Realty Company as part payment of the principal
sum named in said note and mortgage, the following sums
and upon the following dates: April 1, 1918, $100; October
1, 1918, $100; October 19, 1919, $100; and the said John-
son Realty Company received the said sum as credit on the
principal sum named in said mortgage." That from and
after the execution of said note and mortgage said Jarman
paid the accrued interest as it matured to said Johnson, and
received from the latter the canceled interest coupons, and
said Johnson continued to remit to the plaintiff the interest
as it matured and was paid by Jarman up to and including
October 1, 1919. That neither said Johnson nor any one
else ever paid to the appellant said $300 paid as aforesaid.
"That plaintiff permitted the said Johnson to act as his
agent in the matter of collecting the interest due on said
note and mortgage without disclosing in any manner, other
than by the recording of the assignment as aforesaid, his
ownership of said note and mortgage, and no evidence was
elicited to show any circumstance at any time to place the
mortgagor on inquiry as to any want of authority on the
part of Johnson to exercise full control over the note and
mortgage, except the fact that neither the said C. W. John-
son nor the Johnson Realty Company nor the Houston Real

Estate Investment Company ever had the possession or control of said note or mortgage after the assignment thereof to the plaintiff as aforesaid. That the interest coupon note, which became due and payable on April 1, 1920, has not been paid by the defendant Heber Jarman or any one on his behalf.'' That upon learning that the appellant was the owner of said note and mortgage, and that Frank B. Stephens ''was his duly authorized representative and attorney,'' Jarman, on the 12th day of April, 1920, tendered to said Stephens the sum of $33.25, that being the semiannual interest which had accrued on the $950 remaining unpaid on said $1,250 loan after deducting said $300, paid as aforesaid. That said tender was refused upon the ground that the interest upon the whole sum of $1,250 remained unpaid, amounting to $43.75, and that said Jarman did not keep his tender good. That upon refusal of said Jarman to pay said accrued interest, amounting to $43.75, the appellant ''elected to declare the whole principal sum and interest thereon due and payable, and brought this suit to foreclose said mortgage.''

The court also found that the interests of the defendants in said mortgaged premises were inferior and subject to appellant's interest therein.

Upon the foregoing findings of fact the court made its conclusion of law, which reads as follows:

"That the said defendant Heber Jarman, the mortgagor, is entitled to a credit of $300 on the principal sum named in the note and mortgage sought to be foreclosed by this action, and at the time of bringing this suit the mortgagor was not in default in the matter of payment of interest; hence said action was prematurely commenced, and should be dismissed at the plaintiff's costs."

In view that neither party excepts to any of the findings of the court the facts found must stand as a correct statement of facts, and therefore all that we are required to determine is, Are the court's conclusion of law and judgment sound as a matter of law?

The conclusion of law of the district court is based upon our statute (Comp. Laws Utah 1917, § 4903), which reads:

"The recording of an assignment of a mortgage shall not in it-

self be deemed notice of such assignment to the mortgagor, his heirs, or personal representatives so as to invalidate any payment made by them or either of them to the mortgagee."

The theory upon which the district court proceeded is that the payments made by the defendant, the mortgagor, were made pursuant to the provisions of the foregoing statute, and that they were made as a matter of right, and hence the appellant, and not the defendant, must suffer the loss. In view of the findings, if the conclusion of the district court can be sustained at all, it must, in my judgment, be sustained upon the ground stated, since there is nothing in the findings which would justify the conclusion that C. W. Johnson, to whom the defendant made all the payments of accrued interest, had any authority whatever, either express or implied, to collect any part of the principal, much less to receive payment thereof before it became due and payable. I shall refer to this point again, at which time I shall refer to the authorities. The question of agency, therefore, is not in this case.

Eliminating the question of agency, as must be done, are the district court's conclusion and judgment sustained under the provisions of the statute quoted?

The defense relies primarily upon the case of *Johnson* v. *Carpenter,* 7 Minn. 176 (Gil. 120). The case of *Van Kueren* v. *Corkins,* 66 N. Y. 77, is also cited by the defense. It does not appear from the opinion in the latter case, however, whether the instrument that had been assigned was negotiable or not, and hence that case, for reasons hereinafter appearing, may be left out of consideration. There are a few other sporadic cases which sustain the doctrine laid down in the Minnesota case just cited, but, for the reasons hereinafter appearing, it is not necessary to specifically refer to them here.

The decisions in both the Minnesota case and the New York case just referred to are based upon a statute precisely like our Section 4903, supra. There are also many other states which have statutes precisely like the one quoted. By reference to the case of *Johnson* v. *Carpenter,* supra, it will

be observed, however, that the decision is squarely based
upon the assumption that the mortgage was a mere chose in
action - and assignable only in equity. The court further
indulges the presumption in that case that the payment was
made at a time when the note was due and legally payable.
Moreover, the payment in that case was in fact made to the
original mortgagee, and not, as in this case, to a stranger
to the paper. To this latter view I shall refer again here-
inafter. In view, therefore, that the mortgage was assign-
able in equity only, and that the statute in express terms
provided that if a mortgage is assigned and the assignment
recorded the record of such assignment, standing alone, shall
not be notice to the mortgagor of the assignment so as to
deprive him of the right to pay the original mortgagee, the
Minnesota court held a payment made to the mortgagee, as
against his assignee of the mortgage, valid. As already
stated, however, the Minnesota Supreme Court did not hold
that payment could be made with impunity to the original
mortgagee at any time and before payment was due. The
court in express terms based its decision upon the presump-
tion that payment was made when the debt had matured
and it was legally payable. The Supreme Court of Minne-
sota, in a subsequent case, however, (*Blumenthal* v. *Jassoy,*
29 Minn. 177, 12 N. W. 517) expressly holds that where a
mortgage is given to secure a negotiable instrument, any
payment made to the original mortgagee after the indorse-
ment and transfer of the instrument is made at the maker's
risk, and that such a payment cannot be set off against the
negotiable note, but can only be set off as against the mort-
gage, or the lien created thereby. In other words, where a
negotiable instrument is secured by a mortgage and is in-
dorsed in due course before due, the payments made to the
original mortgagee after transfer of the note can only be
credited on the mortgage, and thus can only be applied to
reduce or cancel the lien or the mortgage as the case may be,
but cannot affect the note which remains in full force and
effect, and the holder is entitled to recover a personal judg-
ment for the full amount of the note against the maker, al-

though he may not foreclose the mortgage for more than remains unpaid. No decision,' so far as the writer is aware, however, has gone farther than the Supreme Court of Minnesota, while the overwhelming weight of authority, as I hope to show is squarely against the decision of that court.

The courts generally hold that a negotiable instrument is not affected by any payment made to the original payee, and that a mortgage given to secure the same is likewise unaffected. The decisions are to the effect that the debt is the principal thing, and that "the rule generally recognized is that the mortgage follows the debt as a mere incident, and shares the immunity of the note from defenses and equities, so that in proceedings to enforce the mortgage nothing can be alleged against it which could not have been set up in defense to an action at law upon the note." 27 Cyc. 1324. The foregoing text is supported by a great many cases, among which I cite the following: *Thompson* v. *Maddux,* 117 Ala. 468, 23 South. 157; *Cowing* v. *Cloud,* 16 Colo. App. 326, 65 Pac. 417; *Reeves* v. *Hayes,* 95 Ind. 544-545; *Lewis* v. *Kirk,* 28 Kan. 497, 42 Am. Rep. 173; *Duncan* v. *Louisville,* 13 Bush. (Ky.) 378, 26 Am. Rep. 201; *Clasey* v. *Sigg,* 51 Iowa, 371, 1 N. W. 590; *Brooke* v. *Struthers,* 110 Mich. 562, 68 N. W. 272, 35 L. R. A. 536; *Borgess Inv. Co.* v. *Vette,* 142 Mo. 560, 44 S. W. 754, 64 Am. St. Rep. 567; *Paige* v. *Chapman,* 58 N. H. 333; *Magie* v. *Reynolds,* 51 N. J. Eq. 113, 26 Atl. 150; *First Nat. Bank* v. *Flath,* 10 N. D. 281, 86 N. W. 867; *Kelley* v. *Whitney,* 45 Wis. 110, 30 Am. Rep. 697; *Van Burkleo* v. *Southwestern Mfg. Co.* (Tex. Civ. App.) 39 S. W. 1085. Should the reader desire to examine additional cases, he will find them collated in 14 Am. Dig., Dec. Ed., under the subject "Mortgages," § 235.

There are, however, in addition to the cases just cited, others in which a statute in terms like ours has been construed and applied, and in which the doctrine announced in the Minnesota and New York cases to which reference has before been made is reviewed and disapproved. The cases to which I desire specially to refer in this connection are the following: *Burhans* v. *Hutcheson,* 25 Kan. 628, 37 Am.

Rep. 274; *Eggert v. Beyer,* 43 Neb. 711, 62 N. W. 57; *Carpenter v. Longan,* 16 Wall. (U. S.) 271, 21 L. Ed. 313; *Manchester v. Parsons,* 75 W. Va. 793, 84 S. E. 885; *Baumgartner v. Peterson,* 93 Iowa, 573, 62 N. W. 27; *Biggerstaff v. Marston,* 161 Mass. 101, 36 N. E. 785; *Williams v. Keyes,* 90 Mich. 290, 51 N. W. 520, 30 Am. St. Rep. 438; *Wilson v. Campbell,* 110 Mich. 580, 68 N. W. 278, 35 L. R. A. 544. See, also, *City National Bank v. Goodloe-McClelland Commission Co.,* 93 Mo. App. 123; *Cunningham v. McDonald,* 98 Tex. 316, 83 S. W. 372; *Dodge v. Birkenfeld,* 20 Mont. 115, 49 Pac. 590; *Murphy v. Barnard,* 162 Mass. 72, 38 N. E. 29, 44 Am. St. Rep. 340. In the latter case the Supreme Judicial Court of Massachusetts, in discussing the legal rights of the holder of a negotiable instrument which has been transferred to him before maturity in due course, the payment of which instrument is secured by a mortgage, says:

"In that transaction the mortgagor who gives his negotiable note, rather than a bond or some non-negotiable obligation, brings himself voluntarily within the rules which govern the payment of negotiable paper, and in effect agrees that he will be bound by them, and that the mortgage shall stand as security for the obligation that he will not only pay the note, but make effectual payment to the party entitled to claim under these rules."

It is accordingly held that payment to the original mortgagee after transfer of the negotiable instrument, cannot avail the payer of the note either as against it or against the mortgage, and that such is the case, notwithstanding the provisions of the statute, that actual notice of assignment of the mortgage is necessary. See, also, Jones on Mortgages (6th Ed.) §§ 834, 835; 1 Daniels on Negotiable Instruments (6th Ed.) §§ 834, 834a; 19 R. C. L. p. 359, § 129. In the authority last cited, after discussing the general rule which obtains where negotiable instruments secured by mortgage are transferred in due course before due, it is said:

"So, a purchaser of the equity of redemption in land, who, knowing that there is an outstanding mortgage and making no inquiry as to the ownership or possession of the bonds secured by it, and requiring no excuse for their nonproduction, pays the amount of

the bonds to the mortgagee, is not entitled as against the assignee, to credit for his payment. The rule obtains whether the assignment is for collateral security or is absolute, and although no record has been made thereof. And it is not altered by the existence of a statute providing that the recording of the assignment of a mortgage shall not be deemed notice to the mortgagor, so as to invalidate payments to the mortgagee. A statute of that character does not authorize the mortgagor to pay the mortgage to one not the holder of the negotiable obligation secured thereby, but it only means that the mortgagor shall not be required to search the record before making payment to the one prima facie entitled to receive it, who, in case the mortgage is accompanied by a negotiable note, is the holder thereof."

In *Carpenter* v. *Longan,* supra, Mr. Justice Swayne goes into the question involved in the case at bar somewhat at length. In the course of the opinion, after pointing out that the transfer of the note, the evidence of the debt, carries with it the security, the justice says:

"All the authorities agree that the debt is the principal thing and the mortgage an accessory. Equity puts the principal and accessory upon a footing of equality, and gives to the assignee of the evidence of the debt the same rights in regard to both. There is no departure from any principle of law or equity in reaching this conclusion. There is no analogy between this case and one where a chose in action standing alone is sought to be enforced. The fallacy which lies in overlooking this distinction has misled many able minds, and is the source of all the confusion that exists. The mortgage can have no separate existence. When the note is paid the mortgage expires. It cannot survive for a moment the debt which the note represents. This dependent and incidental relation is the controlling consideration, and takes the case out of the rule applied to choses in action, where no such relation of dependence exists."

The Supreme Court of Kansas, in *Burhans* v. *Hutcheson,* supra, in speaking through Mr. Chief Justice Horton, after discussing the principle announced by the Supreme Court of the United States in *Carpenter* v. *Longan,* says:

"Counsel for defendants say, that conceding the correctness of the general doctrine laid down in *Carpenter* v. *Longan,* supra, yet the adoption of § 3, c. 68, Comp. Laws of 1879, has placed a legislative restriction upon the negotiability of all mortgages executed since its adoption, and that this statute throws upon the assignee of negotiable paper secured by real-estate mortgages, the burden of

personal notification to the maker of the mortgage of the change
of ownership, if he would cut off future payments to the mortgagee.
Our attention is called to *Johnson* v. *Carpenter*, 7 Minn. 176 [Gil.
120] and to *Van Kueren* v. *Corkins*, 66 N. Y. 77, interpreting a stat-
ute like ours. In *Johnson* v. *Carpenter*, the mortgage is treated as a
chose in action standing alone. In *Van Kueren* v. *Corkins* the suit
was upon a bond and mortgage, and it does not appear that the
bond was negotiable. However, *Johnson* v. *Carpenter*, and the other
authorities referred to in the same direction, are not satisfactory
to us; or, rather, they are not in harmony with the law of mort-
gages in this state. Section 3 speaks of the recording of the as-
signment of the mortgage, and does not by its terms refer to nego-
tiable paper, and it seems to us a strained interpretation to hold its
provisions applicable, where a debt is evidenced by a negotiable
note, secured by mortgage upon real estate, when such mortgage
is merely ancillary thereto, and follows the note wherever it goes,
deriving its character from such instrument. A better interpreta-
tion, and one clearly more in accord with the law of mortgages in
this state, is that such section has reference only to a mortgage
standing alone, or one securing debts and notes of a nonnegotiable
character. Under this interpretation, section 3 of the statute is
not nugatory, but has ample room for operation. As Brandon had
parted with all his interest in the notes and mortgage before accept-
ing the conveyance from Hutcheson and wife, and had no interest
therein at the time, such conveyance did not extinguish the mort-
gage held by plaintiff; nor was it necessary for the plaintiff to
record an assignment of the mortgage to protect himself from the
payment to the mortgagee. The notes and mortgage went together,
and the mortgagor, having made the conveyance and payment with-
out a surrender of the notes or the mortgage, did so at his peril."

The statutes of Kansas, Nebraska, and Michigan are pre-
cisely like our section 4903, and therefore are like that of
Minnesota, but notwithstanding that, all of these courts have
refused to follow the Minnesota doctrine as announced in
*Johnson* v. *Carpenter,* supra.

The reasoning and the conclusion in the Kansas case which
I have quoted from are followed by the Supreme Courts of
Nebraska and Michigan, as appears from the cases I have
cited from those courts. The same conclusion has also been
asserted in other cases to which I do not deem special ref-
erence necessary at this time. It is worthy of remark, how-
ever, that the doctrine announced in the Minnesota case is
based entirely upon the old doctrine that a mortgage, being
a mere chose in action, was not assignable in law, and for

that reason the statute requiring actual notice to the mortgagor of the assignment, if one was made, should be enforced. As I have pointed out, however, the modern doctrine is that when a mortgage is given to secure the payment of a negotiable instrument then the mortgage follows such an instrument as an incident, and hence the Minnesota doctrine cannot apply.

That decision, in my judgment, is however, inapplicable to the law of this state for other reasons. Our statute (Comp. Laws Utah 1917, § 6496) provides:

"In the case of an assignment of a thing in action, the action by the assignee is without prejudice to any set-off or other defense existing at the time of or before notice of the assignment; but this section does not apply to a negotiable instrument transferred in good faith and upon good consideration, before maturity."

It will thus be seen that under our statute a mortgage is assignable in law the same as any other chose in action. This court in territorial days held that the transfer of the note carries with it the mortgage as an incident. In speaking to that point in *Donaldson* v. *Grant*, 15 Utah, 239, 49 Pac. 781, the court said:

"* * * And we have no doubt that the indorsement and delivery of the note to the plaintiff were equivalent to an assignment and delivery of the mortgage to him also."

The modern doctrine that the mortgage follows the note as an incident was thus long ago recognized by this court, and, so far as the writer is aware, has never been departed from, although I know of no case in which *Donaldson* v. *Grant* was expressly followed.

We have another statute (Comp. Laws Utah 1917, § 7253), which provides that a mortgage on real property, whatever its terms, "shall not be deemed a conveyance." If we keep in mind the provisions of section 6496, which I have hereinbefore quoted, wherein it is provided that the notice required by that section respecting the assignment of a chose in action to make the assignment effective, shall not apply to negotiable instruments when transferred in due course before maturity, we have another strong intimation that it was not intended that the provisions of section 4903, upon

which special reliance is placed, should apply to mortgages which in law are treated merely as incidents to the negotiable instruments, the payment of which such mortgages are given to secure.

Then there is still another statute (Comp. Laws Utah 1917, § 7230) which we have had occasion to construe and apply in several cases. See *Boucofski* v. *Jacobsen,* 36 Utah, 165, 104 Pac. 117, 26 L. R. A. (N. S.) 899, and *Coburn* v. *Bartholomew,* 50 Utah, 566, 167 Pac. 1156, which cases have been followed in a later case which it is not necessary to refer to specially. It will be observed that in view of that statute this court has held that in case a note is secured by a mortgage no personal judgment can be obtained against the maker of the note unless and until the property mortgaged or pledged to secure payment of the note has been sold and the proceeds thereof applied in payment of the note. It is therefore held that under that statute the property mortgaged or pledged, or the proceeds derived upon a sale in an action in equity to foreclose the mortgage, constitutes the fund to pay the debt, and it must be exhausted before a personal judgment can be entered against the maker of the note. So long, therefore, as a fund created by contract of the parties to pay the debt remains intact, no personal action will lie. It has also been held that the mortgagee may not waive the provisions of that section without the consent of the mortgagor. The provisions of the statute are therefore directly contrary to the common law by which the creditor had the right to waive the security and bring a personal action.

It would seem reasonably clear, therefore, that in this state the doctrine announced by the Supreme Court of Minnesota, and which I have hereinbefore stated, cannot be followed. That is, the payee of a note, or his assignee, in case the debt is secured by mortgage, cannot recover in a personal action so long as any part of the property mortgaged or pledged to secure the payment of the debt has not been exhausted. From that it seems to me the doctrine is natural and reasonable that the mortgage given to secure the debt is an incident

merely, and is inseparably connected with or bound to the
note evidencing the debt, and was intended to pass with the
transfer of such note.

While I do not contend that the different sections of the
statute herein referred to are conclusive, yet if we keep in
mind the modern doctrine that the negotiable instrument
evidencing the debt which the mortgage is given to secure is
the principal thing, and that the mortgage is a mere inci-
dent, then, in my judgment, the provisions of those sections
are all in harmony with such a view.

There is, however, still another reason why, in my judg-
ment, the conclusion of law and judgment of the district
court in this case cannot prevail, although it were held that
the doctrine announced by the Supreme Court of Minnesota
should be adopted in this jurisdiction. I have hereinbefore
called attention to the fact that the Minnesota Supreme
Court based its decision upon the presumption that at the
time the payment in that case was made by the mortgagor
the debt was due and legally payable. Such is not the
case here. In the case at bar it is conceded that the pay-
ments in question were all made long before the note ma-
tured, as well as long after it had been transferred and de-
livered to the appellant, and that the note and mortgage
always remained in his possession in the state of Illinois. It
is elementary that an obligation, without the consent
of both the obligor and the obligee, can only be legally        3
paid when the same has matured. It is equally ele-
mentary that, although an agent may have authority to
collect an obligation, without the consent of his principal
he cannot receive payment thereof before maturity. It has
expressly been held that payment by the mortgagor of a debt
which has been transferred or assigned to another cannot
legally be made to the mortgagee or its agent before due
without authority to receive payment of the debt. *Watson*
v. *Wyman,* 161 Mass. 96, 36 N. E. 692; *City National Bank*
v. *Goodloe-McClelland Commission Co.,* 93 Mo. App. 123.
To the same effect are *Kernohan* v. *Durham,* 48 Ohio St. 1,
26 N. E. 982, 12 L. R. A. 41; *Head* v. *Cole,* 53 Ark. 523, 14

S. W. 898; *Palmer* v. *Marshall*, 60 Ill. 289; *Wheeler* v. *Guild*, 20 Pick. (Mass.) 545, 32 Am. Dec. 231; 2 Daniel on Negotiable Instruments (6th Ed.) § 1233, in which the author says:

"Payment can only be made before maturity by consent of both debtor and creditor. And it can only be made with perfect safety at or after the maturity of the instrument, unless the payor receives it in his hands and cancels it; for a payment before maturity is not in the usual course of business; and should the bill or note afterwards, and before maturity, reach the hands of a bona fide holder for value, without notice, such holder could enforce a second payment. And an agent who has authority to collect a note when it shall become due has no authority to receive payment before maturity."

It is manifest, therefore, that for the reasons just stated, if for no other, the doctrine applied in the Minnesota case cannot be applied to the case at bar.

There is still another reason, however, why the case at bar cannot be influenced by the Minnesota cases or by any others which follow the doctrine laid down in those cases. It will be observed that section 4903 authorizes only the "mortgagor, his heirs or personal representatives," to make payments to the "mortgagee." C. W. Johnson, to whom the payments were made by the defendant Jarman, was neither the mortgagee nor the assignee or agent of the mortgagee, and hence did not come within either the letter or spirit of the statute. He was a mere stranger to the note and mortgage, and had no more legal right to receive payment thereof than any other stranger to the paper would have had without authority from the appellant either express or implied. There is, there can be not even a semblance of a claim that Johnson had any authority whatever, either express or implied, to collect the principal at any time, much less that he had any authority to do so before the maturity of the debt.

In view of the undisputed facts in this case and the decisions as I read and understand them, therefore, there is no decision, either ancient or modern, of any court anywhere that sustains the conclusion of law and judgment of the district court.

Appeal from Second District

For the reasons stated the judgment of the district court is reversed, and the cause is remanded to said court, with directions to set aside the conclusion of law and judgment and to enter a conclusion of law in favor of appellant and enter judgment in accordance with the prayer of the complaint. Appellant to recover costs.

CORFMAN, C. J., and WEBER and THURMAN, JJ., concur.

GIDEON, J., concurs in the result.