ALBANY COUNTY BANK v. PEOPLE'S CO-OPERATIVE ICE CO. et al.

(Supreme Court, Appellate Division, Third Department.   March 2, 1904.)

1. NOTE—INDORSEMENT—DISCOUNT—HOLDER IN DUE COURSE.

Placing the proceeds of a discounted note to the credit of an indorser at a bank is not a payment therefor, so as to render the bank a holder in due course, within Laws 1897, p. 732, c. 612, § 96, providing that a holder in due course takes a negotiable instrument free from any defenses available to prior parties among themselves, and section 93, providing that, where the transferee receives notice of any infirmity in the instrument before he has paid the full amount agreed to be paid therefor, he will be deemed a holder in due course only to the extent of the amount paid.

2. SAME—DISHONOR—DEFECT IN TITLE—NOTICE.

Where a bank discounted a note by simply placing the proceeds thereof to the indorser's credit, dishonor of the note by the maker at maturity, and before the indorser had drawn the full amount of the credit, entitles the maker to set up the defense of failure of consideration as against the bank, under Laws 1897, p. 732, c. 612, § 93.

Chester, J., dissenting.

Appeal from Trial Term, Albany County.

Action by the Albany County Bank against the People's Co-operative Ice Company and another. From a judgment on a directed verdict in favor of plaintiff, and from an order denying a new trial, defendant People's Co-operative Ice Company appeals. Reversed.

This action is brought on a promissory note of which the following is a copy:

"New York, May 20, 1902.

"$1,000.  Five months after date we promise to pay to the order of Edward McCabe One thousand dollars at Union Square Bank N. Y. with interest value received.           The People's Co-Operative Ice Company.
"S. Mehrbach, Prest.
"S. C. Blake, Treas."

There is no dispute about the execution of the note and its delivery to the payee. Edward McCabe, the payee, had been a regular customer of the plaintiff for eight or ten years. He kept an account at the bank, and always had a balance to his credit. On the 16th day of October, four days before the note became due, McCabe, at plaintiff's bank, presented the note to the cashier and asked him to discount it; and the note was accepted without further conversation, and McCabe's account was credited with the amount of the note, less 68 cents discount. When the note became due, it was duly presented for payment at the Union Square Bank, N. Y., and payment demanded, which was refused, whereupon the note was duly protested for nonpayment. On the 17th day of November, McCabe again called at the bank, and produced another note, exactly the same in every respect as the one previously discounted, except that it was payable six months after its date, instead of five months after its date, and asked the cashier to discount it; and such note was accepted without further conversation, and McCabe's account was credited with the amount, less 52 cents discount. On October 16th, at the time the first note was discounted, McCabe had to his credit with the plaintiff $1,580.14. The amount placed to his credit on discounting said note was $1,024.32, making the amount to his credit with the plaintiff on that day $2,604.46. That amount remained without further deposits, and without any checks being paid therefrom, until the day the second note was discounted. When the second note was discounted, the amount placed to the credit of McCabe as the proceeds of such note was $1,029.48. On that day—whether before or after the credit of the second note does not appear—one check of $15 was paid by plaintiff. McCabe then had a balance of $3,618.94 to his credit. On October 29, 1902, the plaintiff sued the defendant appellant and said McCabe on said first note.

The complaint alleges the making and delivery of the note, its presentation for payment, and that payment was refused. McCabe did not answer or appear in the action, but the defendant appellant appeared in the action November 13th and served its answer December 11, 1902; and the answer of defendant appellant admits the making and delivery of said note, and denies the other allegations of the complaint, and, as a separate and distinct defense, alleges in detail the making of an agreement in writing between the defendant appellant and said Edward McCabe, and the giving by said defendant appellant to said McCabe of seven notes, of like date and form, payable one each month, commencing August 20, 1902, and ending February 20, 1903; and it further alleges with some detail the facts by which it claims that the consideration for the giving of said notes wholly failed. The note in suit is one of the seven notes so given. The deposit to the credit of McCabe in the plaintiff's bank of $3,618.94 remained therein without change on November 21, 1902. On December 30, 1902, McCabe had a balance to his credit with the plaintiff of $4,403.93. At the time of the trial McCabe did not have any money on deposit with the plaintiff, but when the same was drawn from the bank does not appear; and it does not appear whether McCabe drew any money from his account with the plaintiff between November 21, 1902, and December 30, 1902. At the time the note was discounted, McCabe was not in any way indebted to the bank.

The action was tried at the Albany trial term in April, 1903. On the trial, after the facts as above stated were shown, and it was conceded by defendant that it had no further testimony that it desired to produce relating to plaintiff's knowledge of the maker's defense to the note at the time plaintiff discounted the note, the court refused to allow the defendant to produce testimony relating to its defense, and directed the jury to find a verdict in favor of the plaintiff for the amount of the note, with interest, and a verdict was found accordingly. A motion was made to set aside the verdict and for a new trial, which was denied.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and HOUGHTON, JJ.

Herbert R. Limburger and P. J. Rooney, for appellant.
Lansing Hotaling, for respondent.

CHASE, J. The question is presented by this appeal whether a bank, which purchases in due course of business a promissory note of the payee therein named before maturity, and places the purchase price thereof to the credit of such payee, and retains the same until after knowledge that there is an entire failure of consideration for the note as between the maker and payee thereof, can subsequently give to the payee the proceeds of the note, and retain the right to insist that it is a holder for value, and protected from any defense existing between said maker and payee. The question is here free from any complication that may arise where such payee's account is an active one, and the balance is materially changing from day to day. The evidence is undisputed that the proceeds of the note were deposited to the payee's account, and such proceeds of the note (except perhaps $15 thereof), and also a much larger amount, remained on deposit with the plaintiff not only until the note was dishonored, but until long after the plaintiff brought this action, and, so far as appears, until long after defendant's answer was served.

The negotiable instruments law (chapter 612, pp. 727, 732, Laws 1897) provides:

"Sec. 96. A holder in due course holds the instrument free from any defect of title of prior parties and free from defenses available to prior parties among

themselves, and may enforce payment of the instrument for the full amount thereof against all parties liable thereon."

"Sec. 91.  A holder in due course is a holder who has taken the instrument under the following conditions:   (1) That it is complete and regular upon its face;  (2) that he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact;  (3) that he took it in good faith and for value;  (4) that at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

"Sec. 51.  Value is any consideration sufficient to support a simple contract. *   *   *"

"Sec. 93.  Where the transferee receives notice of any infirmity in the instrument or defect in the title of the person negotiating the same before he has paid the full amount agreed to be paid therefor, he will be deemed a holder in due course only to the extent of the amount theretofore paid by him."

A deposit by a bank of the proceeds of a note to the account of a customer is not of itself a payment for the note.   It is simply a promise by the bank to pay such proceeds to the customer by honoring his checks or drafts in the ordinary way pursued by banking institutions. The bank does not by such transaction transfer the title to any particular money to its customer.   The bank becomes a debtor to the customer to the amount of such credit.

It is said by the Supreme Court of the United States in New York County National Bank v. Massey (N. Y. Law Journal, Jan. 14, 1904) 24 Sup. Ct. 199, 48 L. Ed. 138:

"It cannot be doubted that, except under special circumstances, or where there is a statute to the contrary, a deposit of money upon general account with a bank creates the relation of debtor and creditor.  The money deposited becomes a part of the general fund of the bank, to be dealt with by it as other moneys—to be lent to customers and parted with at the will of the bank—and the right of the depositor is to have this debt repaid, in whole or in part, by honoring checks drawn against the deposits.  It creates an ordinary debt, not a privilege or right of a fiduciary character.  Bank of the Republic v. Millard, 10 Wall. 152 [19 L. Ed. 897].  Or, as defined by Mr. Justice White in the case of Davis v. Elmira Savings Bank, 161 U. S. 288 [16 Sup. Ct. 502, 40 L. Ed. 700], 'The deposit of money by a customer with his banker is one of loan, with the superadded obligation that the money is to be paid when demanded by a check.'  Scammon v. Kimball, 92 U. S. 369 [23 L. Ed. 483]."

The Court of Appeals, in Ætna National Bank v. Fourth National Bank, 46 N. Y. 82, 7 Am. Rep. 314, say:

"The relation of banker and customer, in respect to deposits, is that of debtor and creditor.  When deposits are received, they belong to the bank, as a part of its general funds;  and the banker becomes the debtor to the depositor, and agrees to discharge the indebtedness by paying the checks of the depositor, his creditor.  The contract between the parties is purely legal, and has no element of a trust in it."

The rights of parties, where a note has been discounted by a bank, and the proceeds credited on the books of the bank to the person from whom it was purchased, have been repeatedly stated by text-writers and by the courts, from some of whom we quote as follows:

Daniel on Negotiable Instruments (5th Ed.) at section 779b, says:

"The apparent purchase must have been a purchase in fact, and not a mere bookkeeping entry.  Mere discount and credit do not of themselves constitute a bona fide purchaser for value.  To occupy that position, the holder must actually have parted with something of value for the note.  Thus, where a bank discounted a note for a company, and credited it with the amount, the credit,

on account of other deposits, subsequently increasing so that at the time of suit on the note the bank had actually paid nothing for it, it was held not a purchaser for value, and that its remedy was to tender the note back to the company and cancel the credit."

In Eaton & Gilbert on Commercial Paper, p. 306, it is said:

"A bank, by merely discounting a bill or note, and placing the proceeds to the credit of the payee, does not become a holder for value; but when the bank, on the strength of such credit, has relinquished securities in its possession, or made advances to or paid the checks of the payee, it becomes a holder for value."

In Cyclopedia of Law & Procedure, vol. 7, p. 929, it is said:

"While the authorities are not entirely uniform upon the subject, it is fairly well settled that a bank, by discounting negotiable paper, placing the same to the credit of the depositor, and honoring his checks or drafts, surrendering to him securities, or in some other manner making advances and extending its credit on the faith of such deposit, thereby becomes a holder for value. But the mere discounting and crediting of the amount on the depositor's account, without making payment or incurring any increased obligations or liabilities, is not sufficient."

In 4 American & English Ency. of Law, 298, it is said:

"Where a bank discounts paper for a depositor who is not in its debt, and gives him credit upon its books for the proceeds of such paper, it is not a bona fide holder for value, so as to be protected against infirmities in the paper, unless, in addition to the mere fact of crediting the depositor with the proceeds of the paper, some other and valuable consideration passes. Such a transaction simply creates the relation of debtor and creditor between the bank and the depositor; and, so long as that relation continues, and the deposit is not drawn out, the bank is held subject to the equities of prior parties, even though the paper has been taken before maturity and without notice."

In Thompson v. Sioux Falls National Bank, 150 U. S. 231, 14 Sup. Ct. 94, 37 L. Ed. 1063, it is said:

"The mere credit of a check upon the books of a bank, which may be canceled at any time, does not make the bank a bona fide purchaser for value. If, after such credit, and before payment for value upon the faith thereof, the holder receives notice of the invalidity of the check, he cannot become a bona fide holder by subsequent payment."

In Central National Bank v. Valentine, 18 Hun, 417, the court say:

"The plaintiff, by its president, discounted the notes, and gave the makers credit on the books of the bank for the amount. No money was actually paid, or thing of value parted with, by the plaintiff, upon the strength of the indorsement or the discount. Under such circumstances, the plaintiff cannot be regarded the bona fide holder of said notes for value, as we understand the law as settled by the adjudications upon that subject. The mere giving of credit by entering the amount on the books, and not actually parting with a dollar upon the strength of the indorsement, cannot be regarded parting with value in the sense which the law contemplates. The parties in whose favor the credit was given might never draw or appropriate any portion of the fund."

In Dykman v. Northbridge, 80 Hun, 258, 30 N. Y. Supp. 164, the court cited Central National Bank v. Valentine, supra, and, referring to the facts in the case before it, said:

"The bank could not become a holder for value of the note by crediting its amount to the cashier. Unless he received the money as an individual, and not as cashier, the bank parted with nothing as a consideration for the note."

In Sixth National Bank of New York v. Lorillard Brickworks Company (Super. N. Y.) 18 N. Y. Supp. 861, the court, referring to a note that had been discounted, and the proceeds credited to the payee on the books of the bank, say:

"The plaintiff must have actually paid out and parted with the proceeds of the discount, before it could acquire an indisputable title thereto."

In Clarke National Bank v. Bank of Albion, 52 Barb. 592, the court, referring to a check purchased by plaintiff of Ward & Bro., say:

"The credit of the avails of the check to Ward & Bro. on the books of the bank was in no sense a paying over. The sum agreed upon as the price of the check was not by that act parted with and placed beyond the control of the plaintiff. * * * The plaintiff, upon receiving notice of dishonor, had an undoubted right to erase the credit, as it did, and restored it only at the special instance of Ward & Bro. No argument can prove that the bank had, prior to notice of dishonor, parted with value for this check."

From the authorities quoted, it will be seen that a bank is not a holder of a note in due course, as defined by the negotiable instruments law, when the proceeds of the note are simply credited to the person from whom it was purchased, and not paid out until the bank had notice of an infirmity in the instrument, or defect in the title of the person from whom the note was purchased. Section 93 of the negotiable instruments law seems to be declaratory of the law as uniformly stated in the decisions of this and other states. If it is conceded that the plaintiff had notice of an infirmity in the instrument in suit, or of defect in the title of McCabe thereto, before it paid out the full amount agreed to be paid therefor, the defendant appellant was entitled to give evidence of its defense by the express terms of the statute.

The effect of notice of dishonor of a note is stated in Daniel on Negotiable Instruments (5th Ed.) § 782, as follows:

"If it were not paid, at maturity, it is then considered as dishonored, and, although still transferable in like manner and form as before, yet the fact of its dishonor, which is apparent from its face, is equivalent to notice to the holder that he takes it subject to its infirmities, and can acquire no better title than his transferror. The doctrine applicable to this subject has been admirably stated by Chief Justice Shaw, who says: 'Where a negotiable note is found in circulation after it is due, it carries suspicion on the face of it. The question instantly arises, why is it in circulation? Why is it not paid? Here is something wrong. Therefore, although it does not give the indorsee notice of any specific matter of defense, such as set-off, payment, or fraudulent acquisition, yet it puts him on inquiry. He takes only such title as the indorser himself has, and subject to any defense which might be made if the suit were brought by the indorser.'"

Whether notice of dishonor of a note is alone sufficient in all cases to constitute notice of an infirmity in the instrument, or defect in the title of the person negotiating the same, is not necessary now to determine. The facts before the court when it refused to allow the defendant appellant to produce evidence relating to its defense were such that the evidence should have been received.

The judgment should be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur, except CHESTER, J., who dissents.