The Citizens' State Bank, Respondent, *v.* Sarah B. Cowles, Appellant.

Negotiable Instruments Law — Bona Fide Holder for Value. The mere crediting to a depositor's account on the books of a bank of the amount of a check drawn upon another bank, where the depositor's account continues to be sufficient to pay the check in case it is dishonored, does not constitute the bank a holder of the check in due course within the law merchant, as that term is now defined in the Negotiable Instruments Law (L. 1897, ch. 612, § 91), so as to render its title superior to the defenses which the drawer of the check may have against the payees.

*Citizens' State Bank* v. *Cowles*, 89 App. Div. 280, reversed.

(Argued January 23, 1905; decided January 31, 1905.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered January 16, 1904, affirming a judgment in favor of plaintiff entered upon a verdict directed by the court and an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Justus A. B. Cowles* and *Charles P. Cowles* for appellant. The trial judge erred in directing a verdict for the plaintiff at the close of the testimony. (*Higgins* v. *Eagleton*, 155 N. Y. 466; *Whitaker* v. *S. I. M. R. R. Co.*, 72 App. Div. 468; *Williams* v. *Brown*, 53 App. Div. 486; *Martin* v. *H. Bank*, 160 N. Y. 190; *Thompson* v. *S. F. Nat. Bank*, 150 U. S. 231; *A. C. Bank* v. *P. I. Co.*, 92 App. Div. 47; *Smith* v. *E. W. Bank*, 31 App. Div. 6; *Smith* v. *Miller*, 43 N. Y. 171; *Sylvester* v. *Crohan*, 138 N. Y. 494; *Murphy* v. *Levy*, 23 Misc. Rep. 147.)

*Jerome A. Peck* for respondent. The title to money, checks or drafts deposited by a customer with a bank passes to the bank. (*E. Nat. Bank* v. *F. Nat. Bank*, 46 N. Y. 82; *Craig*

v. *Hadley,* 99 N. Y. 133 ; *L. Nat. Bank* v. *O. Nat. Bank,* 60 N. Y. 278 ; *Riverside Bank* v. *W. J. L. Co.,* 34 App. Div. 359 ; *M. Nat. Bank* v. *Loyd,* 90 N. Y. 530 ; *People* v. *St. N. Bank,* 77 Hun, 159.) There was no question to be submitted to the jury. (*Fealey* v. *Bull,* 163 N. Y. 397 ; *Strickland* v. *Henry,* 175 N. Y. 374 ; *People* v. *St. N. Bank,* 77 Hun, 159.)

WERNER, J.  The action is upon a check dated June 1st, 1900, drawn by the defendant upon the First National Bank of Port Chester, N. Y., to the order of W. W. Miller & Sons, for $600. The check was given in payment for a team of horses purchased by the defendant from the Millers under a written guaranty of soundness and condition, the alleged breach of which is now sought to be interposed as a defense.

The horses were delivered shortly after midnight on the 2nd day of June, and later in the morning it was discovered that one of them was ill from pneumonia, as a result of which it died within about nine days. On Monday, the 4th of June, which was the first business day after the giving of the check, the defendant's son notified the bank to stop payment on the check and then communicatad by telephone with one of the payees, advising him of the sickness of one of the horses, and of the fact that payment of the check had been stopped.

The payees indorsed the check to one George M. Hoffman, the president of the plaintiff bank, and mailed it to him at Little River, Kansas, but whether it was so mailed before or after the notification as to the illness of the horse does not appear. Hoffman received the check on the 8th day of June, indorsed it, and within two or three hours deposited it with the plaintiff, which credited the amount thereof to Hoffman's account, indorsed the check to the National Bank of Kansas City, Missouri, and sent it to that bank for collection. What was done with the check after that does not appear, except as it may be inferred from the fact that it was received by the First National Bank of Port Chester (on which bank it was

drawn) on the 14th of June, where it was protested and marked " Payment stopped."

One of the issues tendered by the defendant's answer was that the plaintiff was not an innocent holder of the check for value. Upon the trial the plaintiff made out its case by introducing the check in evidence and relying upon the presumptions in support of negotiable paper, together with the allegations and admissions of the answer. The defendant then introduced evidence bearing upon the breach of warranty or failure of consideration in the sale of the horses, and this was supplemented by reading from depositions issued to Hoffman and Waitt, who were officers of the plaintiff bank. From these depositions it appeared that at the time of the delivery of the check to the plaintiff the payees thereof did not have an account with the plaintiff bank, and that the check was indorsed by the payees to Hoffman, who at once indorsed and delivered it to the plaintiff. At this point we encounter some haziness in the testimony. Hoffman stated that the check was indorsed to him and he received the money from the bank. Waitt, the cashier, testified that the plaintiff paid $600 for the check, but afterwards qualified this by saying that as cashier he credited Hoffman's account with the amount of the check. Had the conflicting inferences which may be drawn from these equivocal statements been submitted to a jury with proper instructions the defendant would, of course, be bound by a decision against her, because it would have to be assumed that the plaintiff had become the actual owner of the check by purchase. The difficulty with the case is that the verdict was directed against the defendant, thus entitling her to the most favorable inferences to be drawn from the evidence. (*Higgins* v. *Eagleton,* 155 N. Y. 466; *Ladd* v. *Ætna Ins. Co.,* 147 id. 478, 484; *Weil* v. *D. D., E. B. & B. R. R. Co.,* 119 id. 147, 152.)

It is obvious that if the evidence would support the inference that the plaintiff did not buy the check but simply gave Hoffman credit for the amount upon its books, then plaintiff is not a holder of the check in due course within the law mer-

chant, as that term is now defined in the Negotiable Instruments Law, so as to render its title superior to the defenses which the drawer of the check may have against the payees. Under the Negotiable Instruments Law four elements must concur to constitute such a title.  1. The instrument must be complete and regular on its face.  2. The holder must receive it before it is overdue and without notice that it has been previously dishonored, if that is the fact.  3. It must have been taken in good faith and for value.  4. It must have been taken without notice of any infirmity in the instrument or defect in the title of the person negotiating it.  (Neg. Instruments Law, § 91.)  If the plaintiff had not actually parted with value before it received notice of the dishonor of this check, it is apparent that at least one of these elements is lacking in the plaintiff's title.  The authorities hold that the mere crediting to a depositor's account, on the books of a bank, of the amount of a check drawn upon another bank, where the depositor's account continues to be sufficient to pay the check in case it is dishonored, does not constitute the bank a holder in due course.  (*Albany County Bank* v. *People's Co.-Op. Ice Co.*, 92 App. Div. 47; *Thompson* v. *Sioux Falls Nat. Bank*, 150 U. S. 231, 244; *Dykman* v. *Northbridge*, 80 Hun, 258; *Central Nat. Bank* v. *Valentine*, 18 Hun, 417.)

The evidence upon this feature of the case is meagre and unsatisfactory, but we must take it as it is.  Hoffman, the plaintiff's president, stated that he received the money on the check, but he did not fix any time.  For aught that appears in the record, that may have been after the plaintiff had received notice of the dishonor of the check.  Waitt, the plaintiff's cashier, stated that the plaintiff had paid six hundred dollars for the check, but that is qualified by his later statement that he gave Hoffman credit for the amount upon the books of the bank.

The view of the evidence most favorable to the defendant would, we think, have justified a jury in finding that the amount of the check had simply been credited to Hoffman's

account, and that no money was paid to him by the plaintiff upon the check before the latter had notice of its dishonor.

The judgments of the courts below should be reversed, and a new trial granted, with costs to abide the event.

Cullen, Ch. J., Gray, O'Brien, Bartlett, Haight and Vann, JJ., concur.

Judgments reversed, etc.