# CHARLESTON.

MERCHANTS & MECHANICS SAVINGS BANK *v.* JOHN R. HADDIX

Submitted October 28, 1924. Decided November 11, 1924.

1. BILLS AND NOTES—*Every Holder of Complete Negotiable Note Regular on Face Presumed "Holder in Due Course."*

   Every holder of a negotiable note complete and regular upon its face is deemed *prima facie* to be a holder in due course, that is, that he became a holder of it before it was overdue and without notice that it had been previously dishonored, if such was the fact; that he took it for value and in good faith; and that at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it. (p. 541.)
   (Bills and Notes, 8 C. J. § 1289).

2. SAME—*Bank Discounting Negotiable Note Complete and Regular on Face Presumed Holder for Value.*

   Where a bank discounts such a negotiable note for the payee and places the proceeds thereof to the credit of the payee's account in the bank, in an action on the note brought by the bank against the maker the bank is deemed *prima facie* a holder for value. (p. 541.)
   (Bills and Notes, 8 C. J. § 1289).

3. SAME—*Mere Transfer of Proceeds of Note Discounted by Bank to Transferor's Account Held Not Payment Making Bank Holder for Value After Non-Payment at Maturity.*

   Merely transferring the proceeds of the note to the transferor's account is not payment of such proceeds, and will not in itself make the bank a holder for value when after non-payment of the note at maturity the proceeds remain to the credit of the transferor's account. (p. 541).
   (Bills and Notes, 8 C. J § 700)
   97 W. Va.

4.  SAME—*Burden of Showing Proceeds of Note Discounted by Bank and Credited to Maker's Account Have Not Been Paid Out or Drawn on is on Defendant.*

But in an action by the bank against the maker, where the proceeds have been credited to the transferor's account, the burden of showing that the proceeds have not been paid out or drawn upon is upon the defendant; and in the absence of such showing the bank will be deemed a holder in due course. (p. 542.)

(Bills and Notes, 8 C. J. § 1289)
NOTE—Parenthetical references by Editors C. J.—Cyc. not part of syllabi.

Error to Circuit Court, Taylor County.

Action by Merchants' & Mechanics' Savings Bank against John R. Haddix.    Judgment for defendant, and plaintiff brings error.

*Reversed; verdict set aside; new trial.*

*John L. Hechmer,* for plaintiff in error.
*O. E. Wyckoff,* for defendant in error.

MEREDITH, PRESIDENT:

This is a writ of error to a judgment for the defendant rendered by the circuit court of Taylor County March 5, 1923. Plaintiff brought its action by way of notice of motion to recover the unpaid balance of a negotiable promissory note signed by defendant as maker and payable 365 days after its date, November 28, 1921, to Roy W. Hauser.   The note was for $400 and bore interest at 6%.   The due date was shown on the face of the note to be November 28, 1922.

Plaintiff in its notice admits a payment of $122.13 as of November 28, 1922, but seeks to recover $307.28, balance of principal, interest and protest fees.   It offered as evidence the note itself, endorsed by the payee, and the testimony of its cashier and assistant cashier, and attempts to make out a case for recovery on the ground that it is a holder in due course.   Defendant refuses to pay on the ground that he has already satisfied the note in full, having paid $150 to Hauser by check dated September 26, 1922, and an additional $150 by check dated November 1, 1922, as well as the $122.13 admitted in plaintiff's notice.   The note does not bear any indorsements evidencing the two payments of $150 each, but defendant denies that plaintiff is a holder in due course.   On

the contrary, he asserts that at the time he paid the final payment of $122,13, the plaintiff merely held the note for collection for Hauser, wherefore the defense of payment would be available. By exhibiting his cancelled checks and receipts signed by Hauser, defendant amply proved his payments to Hauser totalling $300; the sole issue is as to the nature of plaintiff's holding of the note. If it was a holder in due course it of course had no notice of the payments made by defendant to Hauser and would not be bound by them.

> "A holder in due course holds the instrument free from any defect of title of prior parties, and free from defenses available to prior parties among themselves and may enforce payment of the instrument for the full amount thereof, against all parties liable thereon." Code, ch. 98-A, sec. 57. See also: *Manchester v. Parsons*, 75 W. Va. 793, 84 S. E. 885.

As stated, the payments were not endorsed on the note, nor was there any evidence of actual notice thereof to the plaintiff and plaintiff says the statutory presumption that every holder is a holder in due course (§59, ch. 98-A, Code) has not been rebutted.

We must consider the scope of this presumption, whether it covers plaintiff's case. In order to understand plaintiff's case so as to determine what principals are applicable we must also briefly review the evidence.

Plaintiff's assistant cashier testified first. He identified and exhibited the note, and stated that it was discounted and placed to Hauser's credit December 12, 1921. This was evidenced by the witness' introduction into the record of a credit memorandum in favor of Hauser for $393.30. It, however, bore no date. He then testified that the only payment received by plaintiff was $122.13, paid by defendant November 28, 1922, while plaintiff was the holder of the note. By a second memorandum it was shown that this payment was noted "By B. R. No. 279", November 28, 1922. The check for $122.13, signed by defendant, was drawn upon the First National Bank of Grafton and was payable to Hauser. It

bore the notation "In full of all accounts", and Hauser's name was endorsed thereon by the bank.

In his own behalf defendant admitted the execution of the note and its delivery to Hauser. He then testified to the two $150 payments as aforesaid, stating that Hauser didn't have the note with him when the first payment was made, but that it was supposed to be in his possession. He testified that he delivered his check for $122.13, dated November 28, 1922, payable to Roy W. Hauser, to the assistant cashier of plaintiff at the plaintiff bank; that upon his showing to the assistant cashier that he had paid $300, that officer remarked "You don't owe Mr. Hauser much on this note"; and accepted the check for $122.13, making allowance in computing the interest for the former payments. Upon defendant's request that the note be delivered to him, the assistant cashier stated that as Hauser had "skipped out" he would have to protest the note, and would check the difference between Hauser's account in the bank and the note. Defendant says that he was later advised that the account lacked $175 or $180 of covering it, and that he was notified that plaintiff would hold him, the defendant, liable for what he had paid Hauser. Defendant says he did not know that the note was in the plaintiff bank until the 22d or 23d of November.

The assistant cashier, having been recalled as witness, admitted the reduction of the interest because of the former payments, explaining that as he did not know that Hauser had left the country he anticipated no difficulty in recovering the balance from him. He says he explained that the note could not be turned over to defendant until the balance was collected from Hauser. As to the check for $122.13 being in full of all accounts, the witness testified that the amount so paid was credited on the back of the note for the actual amount received.

The cashier, father of the assistant cashier, was then called. Testifying from a memorandum he stated that the note was discounted at the plaintiff bank on November 28, 1921, the day of its execution, and that it had been in the bank's possession since that time.

Recalled to the stand, defendant testified that he executed

the note between six and seven o'clock in the afternoon of November 28, 1921, in Hauser's garage. He denied hearing the assistant cashier make any statement that it would be necessary to collect the balance of the note from Hauser before delivering it to defendant.

The court instructed the jury that if they should find from the evidence that plaintiff was a holder in due course, the payments made by defendant could not be applied to the note and plaintiff should recover the amount thereof with interest from its date, less the credit of $122.13 as of November 28, 1922.

Two instructions were given on defendant's behalf, that if the jury should believe that plaintiff was not a holder in due course, or should believe that the note was the property of Hauser when defendant made his payment of $122.13, they should find for the defendant.

As the verdict was for defendant, the jury evidently found that plaintiff was not a holder in due course. The question for us is, resolving all conflicts of fact in the testimony in defendant's favor, was the verdict a justifiable one from a legal standpoint?

Plaintiff's case rests upon three circumstances.

1. It was the holder of the negotiable note, sufficient on its face to constitute plaintiff a holder in due course;

2. It proved from its banking records that the note was discounted by it, and the proceeds credited to Hauser; and

3. The statements of the assistant cashier that he refused to deliver the note to defendant until satisfaction had been made by Hauser.

The case for the defendant must stand upon whatever weakness there is in plaintiff's position, and upon his version of his transactions with the assistant cashier. We have outlined both defendant's and the assistant cashier's stories of those transactions, and have shown wherein they disagree.

Defendant points out that the assistant cashier and the cashier did not agree as to the date of the discounting of the note, one said November 28, 1921, the other December 12, 1921. That is, however, of little importance. It is easy to err in reading figures from such records, and either date would suffice for plaintiff's purposes. It is shown by the in-

troduction of a memorandum on file in the bank's records that the proceeds, $393.30, were deposited to Hauser's credit, and whether it was on November 28th or December 12th, 1921, seems unimportant.

We stated above that plaintiff contends that the verdict violates the legal presumption in its favor. That presumption is founded upon the section of our negotiable instruments law, sec. 59, ch. 98-A, Code, which reads:

> "Every holder is deemed prima facie to be a holder in due course; but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he claims acquired the title as a holder in due course; but the last mentioned rule does not apply in favor of the party who became bound on the instrument prior to the acquisition of such defective title."

There is no contention here that Hauser's title was defective, so plaintiff says the presumption that it was a holder in due course applies with full force. Defendant in his brief admits that plaintiff made out a prima facie case by the introduction of the note, but claims that it has been sufficiently rebutted to warrant the verdict.

It is well at this point to recall the definition of a holder in due course.

> "A holder in due course is a holder who has taken the instrument under the following conditions: (1) That the instrument is complete and regular upon its face; (2) that he became the holder of it before it was overdue and without notice that it had been previously dishonored, if such was the fact; (3) that he took it in good faith and for value; (4) that at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it." Sec. 52, ch. 98-A, Barnes' Code, 1923.

In the light of the evidence does the presumption apply that plaintiff was the kind of a holder above defined? If so, did the evidence rebut such presumption?

It is not argued that the note in question was not complete

and regular on its face. Consequently, if plaintiff had produced the note and rested, it would have at once established a prima facie case. The evidence goes further, however; it shows that plaintiff credited the proceeds of the note to Hauser's account, and it is suggested that in view of the fact that the mere crediting by the discounting bank to the depositer's account of the proceeds of the discounted paper does not constitute payment of value, the presumption of payment of value is thereby avoided. That the premise for this argument is firmly settled law can not be doubted.

> "The mere crediting by a bank to a depositor's account of the proceeds of a note will not constitute the bank a holder in due course when after nonpayment the amount remains to the credit of such depositor." *Marion National Bank* v. *Harden,* 83 W. Va. 119, 97, S. E. 600, 6 A. L. R. 240. Accord: *Citizens' State Bank* v. *Cowles,* 180 N. Y. 346, 73 N. E. 33, 105 Am. St. Rep. 765; *Northwest State Bank* v. *Alter,* 195 Ill. App. 50; Daniel Negotiable Instruments, (6th. ed.) §779-b.

And sec. 54, ch. 98-A. Code, says:

> "Where the transferee receives notice of any infirmity in the instrument or defect in the title of the person negotiating the same before he has paid the full amount agreed to be paid therefor, he will be deemed a holder in due course only to the extent of the amount *theretofore paid by him.*"

That the bank's credit to the depositor's account prior to any withdrawal therefrom by the depositor does not constitute a payment by the bank is well settled by the authorities above cited, and there are many cases holding that the bank is a holder in due course, under sec. 54, only to the extent that the credit has been drawn upon. See: *Hodge* v. *Smith,* 130 Wis. 326, 110 N. W. 192; *Albany County Bank* v. *Peoples' Ice Co.,* 92 App. Div. 47, 86 N. Y. Supp. 773; *Central Savings Bank of Kentucky* v. *Stotter,* 207 Mich. 329, 174 N. W. 142.

In this case we of course have no knowledge as to what extent, if any, Hauser's credit of the proceeds of the note at the plaintiff bank was drawn upon. But the question is, what of

the presumption that plaintiff held in due course? Is it over-thrown by a showing that the proceeds of the note were credi-ted to Hauser? In formulating our conclusion, the decisions of other tribunals are instructive.

In *Mann* v. *Second National Bank,* 34 Kan. 746, 10 Pac. 150, plaintiff bank sued to recover $143.00 on a promissory note. It was made payable to "Amos Whitley, President". Whitely was president of the Champion Machine Company, and in fact the note belonged to the company. He indorsed the note as president, and the company indorsed it and sold it before maturity to the bank. There were several defenses, and much of the evidence was held to have been improper, but one of the points raised was that it was brought out that plain-tiff had placed the proceeds of the note to the credit of the en-dorser, and that it was not shown that such proceeds had been withdrawn by the depositor or applied to any of its obliga-tions. As to this the court, at page 754, said:

> "If we should assume that the bank did not pay the value of the note at the time it was discounted, but simply gave credit to the Champion Machine Company therefor, still there would be nothing to show whether at that time the bank owed the Champion Machine Company or the Machine Com-pany owed the bank. The Machine Company, for any thing that appears in this case, may have owed the bank more than $143.00 at the time the note was discounted, and if it did, the bank would have obtained the note unaffected by the equities ex-isting between the antecedent parties, of which it had no notice."

And in the syllabus:

> "Mere evidence that at the time when such an instrument was discounted by a bank the bank merely gave credit for the amount of the instru-ment to the person selling the same, who had an account with the bank, without showing the state of the account at that or any other time, will not of itself and alone prove that the bank was not a purchaser for value."

In *Richards* v. *Street,* 31 App. Cas. (D. C.) 427, Street

brought his action against Richards, as endorser of a negotiable note. An affidavit.of defense was filed in which defendant alleged that plaintiff was prosecuting the suit merely as nominal holder of the alleged note for the benefit of the Fourteenth Street Savings Bank. Defendant further asserted that the Fourteenth Street Savings Bank merely discounted the note and placed the proceeds to the credit of the payee. In the opinion the court said:

> "The last ground of defense alleged in the affidavit of defense is that the Fourteenth Street Bank was not a holder for value, because in discounting the note, it merely gave the firm of A. M. Cowell & Son credit for the same on its books. The affidavit it will be remembered, alleges that the plaintiff is merely a holder of said note for the benefit of the said bank. It may be true that a bank which merely gives a credit for the amount of the note to the discounter, and still holds the money unpaid to him or upon his check, is not a holder for value, within the meaning of sec. 1330 of the Code (31 Stat. at L. 1399, chap, 854) ; but it is unnecessary to decide that question. To avail himself of such a defense, the defendant, in addition to the fact that the discount was so applied, must also allege that the money, at the time of notice, remained in the bank to the credit of the discounter. If it has been paid to him or his order, the bank necessarily becomes a holder for value. *Mann* v. *Second Nat. Bank,* 34 Kan. 746, 755, 10 Pac. 150."

In the case of *Morrison et al.* v. *Farmers' & Merchants' Bank of Los Angeles,* 9 Okla. 697, 60 Pac. 273, the plaintiff bank sued to recover upon a draft drawn upon and accepted by Morrison. The plaintiff took the draft before maturity, and the issue was whether plaintiff was a holder in due course. Section 3297 (St. Okla, 1893) provided:

> "The signature of every drawer, acceptor and indorser of a negotiable instrument is presumed to have been made for a valuable consideration, before maturity of the instrument, and in the ordinary course of business."

Under this statute the court said:

> "The Bank of Los Angeles is presumed to have
> taken the draft for a valuable consideration be-
> fore maturity, and in the ordinary course of busi-
> ness; or, in other words, the holder of a bill of ex-
> change is presumed as against the acceptor to be a
> bona fide holder for value.   The burden was on
> Morrison to overcome this presumption by proof;
> otherwise the bank was entitled to judgment for
> the face value of the instrument with interest."

The facts were that the bank took the draft and gave the
drawer, as depositing company, credit therefor on its books.
This alone, of course, did not constitute the bank a holder for
value, but it was properly said that if the bank paid out such
deposit prior to notice of any infirmities, it then became a
holder for value, and as to this the court said:

> "From the evidence introduced in relation to the
> state of the bank's account with Porter Bros.
> Company, it is not made clear whether or not the
> funds placed to the credit of the company were paid
> out by the bank prior to the acceptance of the
> bill of exchange by Morrison,——————We
> are unable to tell from this testimony whether or
> not the bill was paid for by the drawers drawing
> out the amount of the draft before the acceptance.
> What is the effect of this state of the evidence?
> The presumption is that the bank was a purchaser
> for value.   In order to overcome this presumption,
> and let in Morrison's defense as against the draw-
> ers of the draft, the burden was cast upon him of
> showing that the bank was not a holder in due
> course.   This could not be done by showing that
> the bank entered the proceeds of the draft as a
> credit on its bank books.   It was necessary to go
> further, and show that the deposit was not with-
> drawn by the drawers or on their orders, prior to
> the acceptance of the bill by Morrison.   This same
> question was before the Supreme Court of Kansas
> in the case of *Mann* v. *Bank*, 34 Kan. 746, 10 Pac.
> 150.—————— The law applicable to and gov-
> erning negotiable instruments and commercial pa-
> per must not be liberally construed in order to en-

able one who has voluntarily become obligated on
such paper to escape liability.''

A similar case is *Standing Stone National Bank v. Walser
& Conrad*, 162 N. Car. 33, 77 S. E. 1006. There the plaintiff
bank sued upon defendant's note which it had discounted
for the payee, H. P. Reynolds & Co., and the proceeds of
which it had credited to the payee's account. Defendants
interposed the defense that the note was procured by ''fraud
and false representations'' and that the plaintiff took the
note with notice of ''defect in the title.'' That defense was
held, however, to be unsupported by the allegations and proof.
Defendants also contended that plaintiff was not an innocent
purchaser for value, asserting ''that the burden was upon the
plaintiff to prove that it actually paid out to Reynolds the
$350 which the bank placed to the credit of Reynolds' check-
ing account.'' The court admitted the proposition that credit-
ing the proceeds of a note to the depositor's account does not
constitute payment of value, but, after defining a holder in
due course under the negotiable instruments law (Revisal,
2201) stated.

> ''The only question which can be raised is as
> to whether the plaintiff took 'for value', inasmuch
> as it is not shown that the $350 credit given Rey-
> nolds on his checking account two years before ma-
> turity was actually checked out. In short, the con-
> troversy narrows down to the proposition, upon
> whom rests the burden of showing or disproving
> the receipt of the money by the indorser?''

After an analysis of the statute and a review of several
cases, the court emphasized the fact that under them, ''Every
holder is deemed prima facie to be a holder in due course'',
with the single exception that when it is shown that the title
of any person who negotiated the instrument is defective,
the burden is on the holder to prove that he or some other
person under whom he claims acquired the title as a holder in
due course. In that case alone the burden is said to shift,
wherefore the opinion reads:

> ''It is true, as we have already said, that if

it is shown that the bank merely gave the indorser credit on his checking account, and that the money has not been checked out, the presumption is rebutted. But the burden is on the defendant to show this. *Bank* v. *McNair*, 114 N. C. 342, 116 N. C. 554; *Reid* v. *Bank*, 159 N. C. 101; *Boyden* v. *Bank*, 65 N. C. 13.''

And in a subsequent paragraph:

''The fact that the plaintiff went further, and showed that it gave Reynolds credit on his checking account, raised no presumption of law that the money was afterwards checked out, or that it was not, though the lapse of two years might raise a presumption of fact that it was checked out. But no fraud having been alleged, the burden was not thrown upon the plaintiff to show that the money was checked out. The plaintiff can rely upon the presumption that it was a holder in due course, and it was not required to prove actual payment.''

Is not the case before us peculiarly like *Morrison* v. *Bank* and *Standing Stone Bank* v. *Walser?* As we stated above, there is no competent evidence here as to whether the credit was drawn upon by Hauser or not. The credit was allowed not later than December 12, 1921, almost a year prior to the bank's notice of defendant's payments. If inferences are to be indulged in, is there not a reasonable presumption that the $393.30 would have been drawn upon to a substantial extent during that period? Courts have expressed such an opinion. *Standing Stone Bank* v. *Walser, supra;* and *Rawlins County State Bank* v. *Rummell*, 220 Pac. 255. (Kan. 1923).

But aside from such an inference, we are impressed chiefly with the significance of the statute which we have quoted, sec. 59, ch. 98-A, Code, which says that every holder is presumed to be a holder in due course, except in the lone instance where it is shown that the title of any person who has negotiated the instrument is defective. In such case, the burden shifts to the plaintiff, but not so here. True, the evidence does show that when the note was discounted the proceeds were merely credited to Hauser's account, but that is not incon-

sistent with plaintiff's position that it was a holder in due course. It has not contradicted itself in the least, and if it was to be shown that the credit was not drawn upon, all that defendant was required to do was to compel the plaintiff to disclose the history of the account from its books. This he made no attempt to do. Plaintiff was not bound to do so; it had established a prima facie case already. The only authority we find contrary to this view is the expression of Judge Hoke, who filed a brief dissent in the Standing Stone Bank case. He did not develop his views and we do not know upon what reasoning they were based. We think that proof that plaintiff gave credit on its books was not a start in the case which defendant was required to establish.

But defendant offered other evidence. He testified as to oral statements of the assistant cashier at the time he made his payment of $122.13 to plaintiff. To a certain extent the statements were not denied, merely explained from the assistant cashier's view point. Such statements, however, could not affect the true status of plaintiff as shown by its records. The fact remained and remains now that plaintiff had discounted the note long before, and the only material question was whether the credit allowed had been drawn upon. As to that matter defendant offered no proof whatever; although he was bound to do so. On the facts shown plaintiff was prima facie a holder in due course and was entitled to a verdict.

We therefore reverse the judgment, set aside the verdict and award plaintiff a new trial.

*Reversed; verdict set aside; new trial.*