MELVIN H. COX

*v.*

GALIGHER MOTOR SALES COMPANY, *et al.*

(No. 13300)

*and*

MELVIN H. COX

*v.*

GALIGHER MOTOR SALES COMPANY, *et al.*

(No. 13301)

Decided April 8, 1975.

686

*Hudgins, Coulling & Brewster, Paul S. Hudgins* for Galigher Motor Sales.

*Kay, Casto & Chaney, George S. Sharp* for Ford Motor Credit Co. et al.

*Hostler, Logsdon & Shinaberry, Sterl F. Shinaberry* for appellee.

CAPLAN, JUSTICE:

This case is before the Court on appeal from a final judgment order of the Circuit Court of McDowell County. Melvin H. Cox instituted a civil action in that court

against defendants Galigher Motor Sales Company, a corporation; Ford Motor Company, a corporation; Ford Motor Credit Company, a corporation, and General Motors Corporation, a corporation, seeking damages allegedly resulting from a breach of warranty which necessitated costly repairs to a dump truck purchased by the plaintiff.

At the conclusion of a jury trial in the aforesaid action, the jury returned a verdict in favor of plaintiff Cox against defendants General Motors Corporation, Ford Motor Company and Galigher Motor Sales Company in the amount of $7,500.00; against Ford Motor Credit Company in the amount of $6,880.00; and against Ford Motor Company in the sum of $3,640.00. The plaintiff tendered a remittitur of $3,640.00, the sum of the separate verdict against Ford Motor Company, and that verdict was declared to be null and of no effect. General Motors and the plaintiff settled their differences and that defendant was dismissed and is no longer involved in this appeal. The motions of the remaining defendants to set aside the verdicts having been overruled, they prosecute this appeal.

In August, 1968 the plaintiff, Melvin H. Cox, purchased a new Ford dump truck from Galigher Motor Sales at the cost of $27,435.00. The body of the truck was manufactured by Ford Motor Company and the engine was a product of General Motors. Both Ford and General Motors gave Cox written warranties. The Ford warranty covered the truck and engine and the General Motors warranty covered the engine. The truck was sold to the plaintiff under a retail installment contract, which, after being executed by Cox, was assigned to Ford Motor Credit, hereinafter sometimes referred to as Credit Co., a wholly owned subsidiary of Ford Motor Company.

During the purchase negotiations the plaintiff informed the Galigher salesman of the purpose for which he proposed to use the truck and requested that an exhaust brake be installed similar to those on other

trucks owned by him. Galigher, through its salesman, recommended the installation of a Jacobs brake, and, according to the testimony of Cox, guaranteed the brake. This being agreeable to Cox a provision was inserted in the sales contract whereby Galigher agreed to install a Jacobs brake. The plaintiff took delivery of the truck in August and in October the Jacobs brake was installed by Galigher. Cox testified that he had never before owned or used a truck equipped with a Detroit diesel engine or a Jacobs brake and that in making this purchase he relied entirely upon the representations and guarantee of the salesman.

From the voluminous evidence adduced at the trial it appears clear that the truck was unsatisfactory from the time of purchase. Cox testified that prior to the installation of the Jacobs brake it used more oil than it should and that it lacked the power to haul the amount of coal for which it was designed. After the installation of that brake the consumption of oil became extremely excessive and the general performance of the truck continued to be particularly poor. One of the drivers employed by the plaintiff testified that he was the first driver of the truck and that he drove it for approximately one month during which it was "throwing oil outside of it on the fuel pedal and it was sluggish. It didn't have the power like it ought to have had." This was prior to the installation of the Jacobs brake. Drivers who drove this truck subsequent to the installation of the brake testified that it had insufficient power, that it used excessive oil and that it was unsatisfactory for the purpose for which it was purchased.

The subject truck was returned to Galigher for necessary repairs on numerous occasions. On some of these occasions the repair work was performed under the warranty and on others Cox was required to pay. The truck finally became entirely inoperable and Cox requested Galigher to repair it. Galigher refused and referred him to Ray C. Call Company, a General Motors authorized agent. After making an examination of the truck, Call,

stating that the engine had been abused, recommended that repairs be refused under the warranty.

Upon the refusal of Galigher and General Motors to repair the truck, Cox withheld further payments thereon. After the payments were two months in arrears a representative of Credit Co. approached Cox and requested payment. Cox testified that he told the representative that he had already written the checks for the past due payments and would deliver them when the truck was repaired. What transpired thereafter is in conflict. The plaintiff related that the credit representative asked permission to take the truck to Pikeville, Kentucky, where Galigher had a garage, for the needed repairs and that he acceded to that request. He further testified that several days after the truck was towed away he received a notice from Ford Motor Credit Company that the vehicle had been repossessed and would be sold at auction. Credit Co. denied that it had made any misrepresentation to Cox but maintained that the repossession was peaceful and therefore lawful. Upon learning of the intention of Credit Co. to sell the truck, the plaintiff instituted the subject action and was granted an injunction prohibiting the sale of the vehicle pending its outcome.

In addition to damages for the cost of repairs, the plaintiff seeks recovery for the replacement of parts and damage which he alleges were missing and occurred after the truck was removed from his lot by Credit Co. Cox and his brother Artie, who has had over twenty years experience as a truck mechanic and an owner and operator, testified that the cost of replacement of parts missing from the truck, after it was taken to Galigher's in Pikeville, would be between $2,000.00 and $3,500.00. In relation to damages sought, Artie Cox also testified that proper repair of the truck necessitated replacement of the engine with a new one and that in his opinion the cost thereof would be $7,500.00.

As hereinbefore noted the two verdicts to be considered on this appeal, both of which are in favor of plain-

tiff Cox, are (1) $6,880.00 against Ford Motor Credit Company and (2) $7,500.00 against Galigher Motors and Ford Motor Company. Our first consideration will be the appeal of Ford Motor Credit Company.

Ford Motor Credit Company filed a counterclaim against the plaintiff seeking recovery of the unpaid balance still due and owing on the truck. It was its position that it should have received a directed verdict in the amount of $12,775.05 on the following grounds: (1) the plaintiff acknowledged in his complaint that he still owed $13,657.20 on the purchase price of the truck and that he was two months in arrears in his payments; (2) under a provision of the installment contract Cox agreed that he would not set up any claim against a subsequent holder, Credit Co. being such a subsequent holder; and (3) there was no competent evidence to support the verdict of $6,880.00. Credit Co. further asserts that the submission to the jury of form verdicts which ignored its counterclaim constituted reversible error.

Upon consideration of the errors assigned by Ford Motor Credit Company and upon examination of the record and the law applicable to the facts reflected by the record, we are impelled to reverse the judgment entered against Credit Co. The plaintiff readily admits that he still owes a balance in excess of $13,000.00. Although this is undisputed, the plaintiff claims certain set-offs against that indebtedness. These claims arose from his assertion that he refused to make further payments until the truck was repaired; that the truck was illegally repossessed; that during the repossession many parts were taken from the truck; and that by reason of the illegal repossession the plaintiff suffered loss of profits which would have been earned but for the alleged illegality.

Upon the foregoing exchange between Credit Co. and plaintiff Cox, the former must prevail. A provision of the installment contract provides that the buyer (Cox) agrees that he will settle any claim he has with the

seller (Galigher) "and that Buyer shall not setup any such claim, setoff, counterclaim or other defense against any such subsequent holder." Controlling this matter, if, in fact, Credit Co. is the assignee of the contract for value, is *W. Va. Code*, 1931, 46-9-206(1), as amended, the pertinent part of which reads:

> ... an agreement by a buyer ... that he will not assert against an assignee any claim or defense which he may have against the seller ... is enforceable by an assignee who takes his assignment for value, in good faith and without notice of a claim or defense ....

Upon whom is the burden of proof that this assignee took the assignment for value, in good faith and without notice of the claim? The trial court, by giving Instruction No. 5, erroneously instructed the jury that such burden was on Credit Co. This Court, in *Marshall County Bank v. Citizens Mutual Trust Co.*, 114 W. Va. 791, 174 S.E. 556 (1934), held that the mere possession of a negotiable instrument by an assignee imports prima facie that he acquired it bona fide, for full value and without notice of any circumstances impeaching its validity. It was further held that "the burden of proving that a holder did not acquire it bona fide, for value, and without notice" is on the maker. In this case Cox would be in the position of the maker, he having executed the installment contract. See *Merchants & Mechanics Savings Bank v. Haddix*, 97 W. Va. 536, 125 S.E. 362 (1924). Although the cited cases involve negotiable instruments, the same principle applies to the circumstances of the instant case. Therefore, the plaintiff could not assert, as a defense against the claim of Credit Co., the defects in the truck purchased under the installment contract. This claim must be and was, in fact, asserted against the seller.

The plaintiff's contention that the repossession, as related above, was illegal is not well taken. Although it was disputed, the plaintiff claimed that the repossession

was accomplished through deceit. *W. Va. Code*, 1931, 46-9-503, as amended, provides, in part:

> Unless otherwise agreed a secured party has on default the right to take possession of the collateral. In taking possession a secured party may proceed without judicial process if this can be done without breach of the peace or may proceed by action.

Admittedly there was a default and, although we look with disfavor on the use of deceit, such repossession was achieved without a breach of the peace and was lawful. *Cf. Cook v. Lilly,* ___ W. Va. ___, 208 S.E.2d 784 (1974).

Credit Co., having been the holder for value of the installment contract through assignment from the seller, had the right, upon default, to repossess the vehicle. The plaintiff had no recourse to that action, so long as it was peaceful, its claim for any defects in the truck being against the seller and manufacturer of such truck. Therefore, any claims asserted against Credit Co., on this record, relating to defects in the truck, must fail.

A further reversible error against Credit Co. occurred by the use of the form verdicts approved by the trial court over the objection of this appellant. These verdicts read as follows:

We, the jury, upon the issue joined between the plaintiff and the defendant, Ford Motor Credit Company, find for the plaintiff and assess his damages in the sum of $___.

———————————
Foreman

We, the jury, upon the issue joined between the plaintiff and the defendant, Ford Motor Credit Company, find for the defendant, Ford Motor Credit Company.

———————————
Foreman

These form verdicts clearly told the jury that it could find for the plaintiff in a sum certain or it could find for

the defendant. However, such forms completely ignored Credit Company's counterclaim and amounted to a directed verdict against it on such counterclaim. Having precluded the jury from finding any amount for Credit Co. on its counterclaim, the approval and use of such form verdicts constituted reversible error.

Inasmuch as the repossession of the truck was authorized under the contract for default in payments and since Credit Co. repossessed the truck in a lawful manner, it had the right to sell it at auction and no claim by Cox arising from his dissatisfaction with said' truck could defeat that right. The trial court, therefore, should have granted Ford Motor Credit Company's motion for a directed verdict.

Inasmuch as the appeals of Galigher Motor Sales Company and Ford Motor Company basically are grounded on the same assignments of error, they will be considered together. Principally, these appellants contend that the jury verdict was contrary to the law and the evidence; that the jury was permitted to consider improper evidence; and that there was, therefore, no competent evidence upon which the jury could have based its verdict. The verdict involved here is that returned against General Motors Corporation, Galigher Motor Sales and Ford Motor Company in the amount of $7,500.00. As heretofore noted General Motors is no longer involved in this appeal.

This Court has long and consistently held, in determining whether a verdict is supported by the evidence, that every reasonable and legitimate inference in favor of the party for whom the verdict was returned must be considered, and those facts which the jury might properly have found under the evidence must be assumed as true. *Jones, Inc. v. Wiedebusch Plumbing and Heating Co.,* ___ W. Va. ___, 201 S.E.2d 248 (1973); *Moore, Kelly & Reddish, Inc. v. Shannondale, Inc.,* 152 W. Va. 549, 165 S.E.2d 113 (1968); *Morgan v. Price,* 151 W. Va. 158, 150 S.E.2d 897 (1966); *Sargent v. Malcomb,* 150 W. Va. 393, 146 S.E.2d 561 (1966); *Walker v. Monongahela Power Compa-*

*ny*, 147 W. Va. 825, 131 S.E.2d 736 (1963). It is also well settled in this jurisdiction that a party who has a jury verdict in his favor which has been approved by a trial court is in a favorable position and such verdict will not be set aside on appeal on the ground that it is contrary to the evidence unless in that respect it is clearly wrong or is without evidence to support it. *Levine v. Headlee*, 148 W. Va. 323, 134 S.E.2d 892 (1964); *Walker v. Monongahela Power Company, supra, Shaw v. Perfetti*, 147 W. Va. 87, 125 S.E.2d 778 (1962). See 5 Am. Jur. 2d, *Appeal and Error*, Section 833.

The foregoing principles are applicable to the instant case. Although the record reveals that there was a conflict in the testimony, such conflict was resolved by the jury and we cannot say that the jury was clearly wrong or that the verdict was without evidence to support it.

These appellants next contend that the trial court erroneously permitted improper evidence to be considered by the jury and that by reason thereof there was no competent evidence in support of the jury verdict. One complaint common to both appellants was that there was no competent evidence in support of the $7,500.00 verdict. They assert that the testimony adduced from the plaintiff and his brother, Artie Cox, amounted to mere speculation and consequently could not serve as the basis for the verdict.

The plaintiff testified that he had been in the coal hauling business in excess of fifteen years; that during that time he worked on one hundred fifty to two hundred trucks and "learned quite a bit about them"; that he has also purchased and operated many trucks. Artie Cox testified that he had been connected with the coal hauling business for twenty years, during which time he has owned and operated many trucks. He related that over the period of twenty years he has "owned and worked on at least 200 trucks." The plaintiff's brother further testified that over the years he has purchased many parts for trucks; that, in his opinion, a new engine was necessary to put the truck in a workable condition,

because "the engine as a whole was just a bad engine"; and that the cost of a new engine would be "in the neighborhood of maybe $7,500.00."

Implicit in the appellant's objection to this testimony is their contention that Artie Cox is not an expert on the cost of diesel engines and that his testimony in relation to the cost thereof is speculative and inadmissible. This witness was not presented as an expert on the cost of truck engines. However, it appears from his testimony that by reason of his experience, he has unique and special knowledge of the subject matter. See Michie's Jurisprudence, *Evidence*, Section 167. The determination of whether such witness has sufficient knowledge of the matter in question so as to be qualified to give his opinion or conclusion is largely within the discretion of the trial court, and will not ordinarily be disturbed on appeal unless clearly and prejudicially erroneous. See 31 Am. Jur. 2d *Expert and Opinion Evidence*, Section 25 and the cases cited in the footnotes thereto. Cf. *Merrill v. Marietta Torpedo Co.*, 79 W. Va. 669, 92 S.E. 112 (1917).

We are of the opinion that, by reason of the experience and knowledge of the plaintiff and his brother in relation to the purchase, operation and repair of trucks used in the coal hauling business, and in view of the foregoing principles, they were competent to testify as to the needed repairs, including the cost of a new engine. Neither appellant offered testimony relating to such costs and the plaintiff's evidence remained undisputed.

Ford Motor Company further complains that it was liable, if at all, only under the warranty and that the admission of evidence relating to loss of profits constituted reversible error. In view of the instructions given by the court this assignment is without merit. The jury was instructed that Ford Motor Company's liability was limited to the replacement of defective parts. There being competent evidence of such defects, the jury's verdict in regard thereto will not be disturbed. Furthermore, as herein noted, there was competent evidence disputing Ford's assertion that the unsatisfactory per-

formance of the truck became apparent only after the installation of the Jacob's brake.

Galigher Motors further assigned as error the trial court's action in giving Instructions Nos. 1, 2 and 3. Instruction No. 1, complains Galigher, did not correctly set forth the warranty. Our examination of such instruction reveals that it closely followed the language of the warranty and we find no error.

Instruction No. 2 told the jury that if they believed from a preponderance of the evidence that Galigher had sold and installed the Jacobs brake and had warranted such brake to be free of defects in material and workmanship and fit for the purpose for which it was intended to be used and if the jury further believed that the warranty was false and that said Jacobs brake was not free of defects in material and workmanship and not fit for the purpose for which it was intended to be used and that as a result, damage was done to the truck rendering it inoperable, then they were instructed to return a verdict in favor of the plaintiff against Galigher in such amount as would compensate him for all loss and damage, if any, he had sustained by reason of the Jacobs brake. Galigher Motors objected to this instruction on the ground that there was no evidence that it had warranted the Jacobs brake; nor was there any evidence in the record that the unfitness of the Jacobs brake could have caused or contributed to the truck becoming inoperable.

In relation to the contention that there was no evidence that Galigher warranted the Jacobs brake we find Galigher's position untenable. It is uncontradicted, as shown on the installment contract, that Galigher installed the Jacobs brake. The record contains evidence by Cox that Galigher warranted the brake as recited in the instruction. Furthermore, there is ample evidence in the record which, if believed by the jury, shows that the installation of the Jacobs brake caused oil to be thrown into the engine and cab of the truck and contributed to a general breakdown of the engine. Certainly this evi-

dence was proper for jury consideration and the giving of Instruction No. 2 did not constitute reversible error.

Defendant Galigher objected to giving of Instruction No. 3 on the ground that it failed to negative any misuse of the truck by the plaintiff. Again, the defendant's objection is without merit. The warranty by Galigher and its liability were repeatedly, throughout the instruction, limited to normal use of the truck by the plaintiff. In other words, it is clear in the instruction that if the engine were not subjected to normal use and proper service by the plaintiff then Galigher would not be liable under the warranty. Although Galigher claims that the plaintiff abused the truck the record is replete with evidence by several of the truck drivers and the plaintiff to the effect that the oil was changed frequently, the oil filters were changed and the air filter was cleaned at frequent intervals. These are matters for jury determination and under Instruction No. 3 the jury found for the plaintiff.

For the reasons stated herein the judgment of the Circuit Court of McDowell County wherein it approved the verdict in favor of the plaintiff against Ford Motor Company and Galigher Motor Sales Company in the amount of $7,500.00 is affirmed; the judgment against Ford Motor Credit Company is reversed and that aspect of the case is remanded with directions that the court direct a verdict in favor of Ford Motor Credit Company in the sum of $12,775.05, that being the amount reflected by the evidence to be due and owing by the plaintiff on the installment contract.

*Affirmed in part; reversed in part and remanded with directions.*